[S.F. No. 23287. In Bank. Sept. 18, 1975.]

JACK L. HALE, Petitioner, v.
THE SUPERIOR COURT OF THE CITY
AND COUNTY OF SAN FRANCISCO, Respondent;
THE PEOPLE, Real Party in Interest.

222

## COUNSEL

Robert Nicco, Public Defender, and Estella W. Dooley, Deputy Public Defender, for Petitioner.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, W. Eric Collins and Sanford Svetcov, Deputy Attorneys General, for Respondent and for Real Party in Interest.

**OPINION**

**CLARK, J.—** ■ The question presented by this case is whether section 1368.1, subdivision (a), of the Penal Code is unconstitutional insofar as it provides that a hearing into a felony defendant's mental competency may not be held until an indictment or an information has been filed against him.

The question is raised by petition for writ of prohibition filed by a defendant charged by complaint with setting fire to a dwelling, a felony. (Pen. Code, §§ 17, subd. (a), 447a.) Certified to respondent superior court for a competency hearing, petitioner seeks to restrain respondent from conducting the hearing until an indictment or an information is filed. The People contend section 1368.1, subdivision (a), is unconstitutional, arguing it would be a denial of due process to conduct a preliminary hearing when doubt has arisen as to a defendant's competency.

■ Rather than denying due process, the statute promotes it by insuring that a felony defendant will not be committed for incompetency unless there is probable cause to believe he committed the crime with which he is charged. The problem noted by the People may be resolved by conducting another preliminary hearing (or a grand jury hearing) when a defendant adjudged incompetent subsequently regains his competence. (*Chambers* v. *Municipal Court* (1974) 43 Cal.App.3d 809, 812-813 [118 Cal.Rptr. 120].) The statute being valid, the writ must issue.

### *Legislative History*

California's incompetency commitment procedure was substantially amended in 1974 in response to this court's adoption in *In re Davis* (1973) 8 Cal.3d 798 [106 Cal.Rptr. 178, 505 P.2d 1018] of the "rule of reasonableness" announced by the United States Supreme Court in *Jackson* v. *Indiana* (1972) 406 U.S. 715 [32 L.Ed.2d 435, 92 S.Ct. 1845]. (Stats. 1974, ch. 1511.) Prior to 1974, if a defendant did not regain competency, an incompetency commitment was, in effect, a life sentence. It made no difference whether the defendant was charged with murder or petty theft.[1] Nor did it matter whether there had been a judicial determination that probable cause existed to believe him guilty of the crime charged; the question of competency could be raised "at any time during the pendency of an action and prior to judgment." (Pen. Code,

---

[1]Section 1367 of the Penal Code provided that no one could be tried for a "public offense" while mentally incompetent, then referred to as "insane."

§ 1368, as amended by Stats. 1937, ch. 133, § 1, p. 373.) As one commentator has observed, "[T]he net effect of a scheme designed to protect a defendant's Sixth Amendment rights was, in some cases, more severely oppressive than a deprivation of those rights." (Parker, *California's New Scheme for the Commitment of Individuals Found Incompetent to Stand Trial* (1975) 6 Pacific L.J. 484-485.)

### (a) *Jackson v. Indiana*

In *Jackson v. Indiana, supra,* 406 U.S. 715, the court held that Indiana's incompetency commitment procedure denied a defendant due process and equal protection of the laws. The petitioner in *Jackson* was a mentally defective deaf mute charged with robbery. The examining physicians testified that Jackson's inability to hear or communicate, coupled with his mental deficiency, rendered him incapable either of understanding the charges or of participating in his defense. However, the physicians also testified that it was doubtful whether Jackson had sufficient intelligence *ever* to develop the communication skills necessary to be adjudged competent. Moreover, a teacher at the state school for the deaf testified that Indiana had no facilities to teach such skills to someone as severely handicapped as Jackson. Nevertheless, Jackson was ordered committed until such time as he should be certified competent. (406 U.S. at pp. 718-719 [32 L.Ed.2d at pp. 439-440].)

The high court held that the Indiana statute denied a defendant equal protection of the laws because it subjected him to commitment standards more lenient and release standards more stringent than the standards applicable to persons committed under Indiana's civil commitment laws. Whereas mere incompetency to stand trial was sufficient for criminal commitment, civil commitment required a showing that the person either was unable to care for himself or was dangerous to others—a showing not made in Jackson's case. Moreover, a person civilly committed became eligible for release whenever he no longer required custodial care, whereas a person criminally committed had to be competent to stand trial. The record strongly suggested that Jackson met the civil standard for release, but that his chances of meeting the criminal standard were "at best minimal, if not nonexistent." (406 U.S. at pp. 727-729 [32 L.Ed.2d at pp. 444-446].)

The court further held that Jackson's indefinite commitment violated due process. "At the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." (406 U.S. at p. 738 [32 L.Ed.2d at

p. 451].) **The ostensible purpose** of Jackson's commitment was to enable him to **become competent to** stand trial, but that purpose was impossible of achievement, **no matter how** long he was committed.

To prevent such abuses in the future, the court announced a "rule of reasonableness." "[A] person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant. [Fn. omitted.] Furthermore, even if it is determined that the defendant probably soon will be able to stand trial, his continued commitment must be justified by progress toward that goal." (406 U.S. at p. 738 [32 L.Ed.2d at p. 451].)

### (b) *In re Davis*

Constrained to adopt the *Jackson* rule because of similarities between California and Indiana incompetency commitment procedure, this court held that when there is no reasonable likelihood a defendant will regain his competency in the foreseeable future, he must either be released or subjected to civil commitment proceedings under the Lanterman-Petris-Short Act (hereinafter LPS Act). (*In re Davis, supra,* 8 Cal.3d at p. 807.)

The LPS Act then provided for long-term involuntary commitment only if, as a result of mental disorder or impairment by chronic alcoholism, a person was "gravely disabled," that is, unable to feed, clothe or house himself. (Welf. & Inst. Code, § 5008, subd. (h), as amended by Stats. 1971, ch. 1593, § 366, p. 3336.) The LPS Act contained no specific provision for commitment of a criminal defendant found incompetent to stand trial. Although such a defendant might well have been subject to short-term commitment as a person dangerous to himself or others, he would not necessarily have been subject to long-term commitment as "gravely disabled." If he established he was incompetent to stand trial, but was capable of caring for himself, a defendant had to be freed after a short period of treatment, no matter how heinous the offense charged against him. To resolve this problem, and to otherwise bring California's incompetency commitment procedure into conformity with the *Jackson-Davis* guidelines, the Legislature passed Assembly Bill No. 1529. (See Parker, *California's New Scheme for the Commitment of*

*Individuals Found Incompetent to Stand Trial, supra,* 6 Pacific L.J. 484, 487-489.) The statute challenged here was part of that legislation. (Stats. 1974, ch. 1511, § 4.)

### (c) *The New Incompetency Commitment Law*

#### 1. Precommitment Procedure

When a judge doubts a defendant's mental competency, i.e., his ability to understand the proceedings and to rationally assist counsel, the judge shall state his doubt on the record and ask defense counsel's opinion. (Pen. Code, § 1368, subd. (a).) If counsel shares the court's doubt, a hearing shall be held in the superior court to determine the question. If counsel believes his client competent, the court may, nevertheless, order such a hearing. (Pen. Code, § 1368, subd. (b).)

A competency hearing may not be held in a felony proceeding until an indictment or an information is filed. A demurrer or a motion under sections 995 or 1538.5 of the Penal Code may thereafter be made by defense counsel even though the competency hearing is pending. (Pen. Code, § 1368.1, subd. (a).) In a misdemeanor proceeding, defense counsel may demur, or move to dismiss on the ground no reasonable cause exists to believe the defendant guilty of the crime charged, or make a 1538.5 motion. The defendant shall not be certified to the superior court for a competency hearing until the demurrer or motions are decided. (Pen. Code, § 1368.1, subd. (d).)

If the information, indictment or misdemeanor complaint survives the defendant's challenges to its validity, the question of his competency shall be tried by the court or a jury. (Pen. Code, § 1369.) Presumed competent, the defendant must be proven incompetent by a preponderance of the evidence, a unanimous verdict being required of a jury. (Pen. Code, § 1369, subd. (f).) If the defendant is found competent, the criminal proceedings shall resume; if he is found incompetent, he shall be committed to a treatment facility. (Pen. Code, § 1370, subd. (a).)

#### 2. Postcommitment Procedure

Within 90 days, the superintendent of the treatment facility shall report to the court concerning the defendant's progress toward restoration of his competence. If the defendant has regained his competence, the criminal proceedings shall resume. If the defendant has not regained his competence but there is a substantial likelihood that he will in the foreseeable future, the defendant shall remain in the treatment facility.

Thereafter, reports shall be submitted to the court at six-month intervals, a second competency hearing being held at the end of 18 months if the defendant is still hospitalized at that time. (Pen. Code, § 1370, subd. (b).) The maximum period of confinement under section 1370 is three years or the maximum term of the most serious offense charged against the defendant, whichever is shorter. At the end of that period, or whenever the superintendent reports that there is no substantial likelihood the defendant will regain his competence in the foreseeable future, the defendant shall be returned to court. If it then appears to the court that the defendant is "gravely disabled," conservatorship proceedings under the LPS Act shall be initiated. (Pen. Code, § 1370, subd. (c).)

In addition to those unable to feed, clothe or house themselves because of mental disorders, the category of "gravely disabled" persons under the LPS Act was amended to include those who have been found to be, and still are, incompetent, and who are charged with felonies involving death, great bodily injury or serious threat to the physical well-being of another. (Welf. & Inst. Code, § 5008, subd. (h)(2).) Such persons are subject to a one-year conservatorship, renewable yearly on showing that they remain "gravely disabled." (Welf. & Inst. Code, § 5361.)[2]

### Constitutionality

The People contend that section 1368.1, subdivision (a), denies a defendant due process. However, the real fault they find with the statute is that it provides more, not less, process than is due.

The People contend "A mentally incompetent defendant is denied due process of law if forced to proceed with a preliminary examination." So stated, the People's position clearly lacks merit. "Both courts and commentators have noted the desirability of permitting some proceedings to go forward despite the defendant's incompetency. For instance, § 4.06 (3) of the Model Penal Code would permit an incompetent accused's attorney to contest any issue 'susceptible of fair determination prior to trial and without the personal participation of the defendant.' An alternative draft of § 4.06 (4) of the Model Penal Code would also permit an evidentiary hearing at which certain defenses, not including lack of criminal responsibility, could be raised by defense counsel on the basis of which the court might quash the indictment. Some States have statutory provisions permitting pretrial motions to be made or even

---

[2]This summary is, of course, incomplete; it is intended merely to illuminate the question presented in this case.

allowing the incompetent defendant a trial at which to establish his innocence, without permitting a conviction. We do not read this Court's previous decisions to preclude the States from allowing, at a minimum, an incompetent defendant to raise certain defenses such as insufficiency of the indictment, or make certain pretrial motions through counsel." (*Jackson* v. *Indiana, supra,* 406 U.S. at pp. 740-741 [32 L.Ed.2d at p. 452], fns. omitted.)

However, the People's real argument is this: The preliminary hearing is a critical stage of the criminal proceeding. If a preliminary hearing is held while the defendant is incompetent (an obvious possibility under § 1368.1, subd. (a)), he will be entitled to have the information set aside when criminal proceedings resume after his competence is restored. Another preliminary hearing (or grand jury hearing) would then be required to bring the defendant to trial. On the other hand, they argue, the procedure followed by respondent court—determining probable cause for an incompetency hearing on the basis of affidavits in a "non-adversary" proceeding—avoids such redundancy, yet satisfies the minimum requirements of due process. Therefore, they conclude, to conserve judicial resources, this court should approve the procedure followed here, declaring the procedure mandated by statute "unconstitutional" in some unspecified sense.

The initial steps of the People's argument are unobjectionable. ▮ The preliminary hearing is a "critical stage" of the criminal proceeding at which an accused is entitled to the assistance of counsel. (*Coleman* v. *Alabama* (1972) 399 U.S. 1 [26 L.Ed.2d 387, 90 S.Ct. 1999].) Counsel cannot effectively represent a defendant who is unable to understand the proceedings or to rationally assist him. (*Chambers* v. *Municipal Court* (1974) 43 Cal.App.3d 809, 813 [118 Cal.Rptr. 120].) Therefore, if a preliminary hearing is held while a defendant is incompetent, and if criminal proceedings subsequently resume upon restoration of his competence, the defendant would be entitled to have the information set aside. (Pen. Code, § 995; *Chambers* v. *Municipal Court, supra.*) As the People contend, bringing the defendant to trial under these circumstances would require another preliminary hearing or grand jury hearing.

However, assuming arguendo that the procedure followed by respondent court satisfies the minimum requirements of due process, it is not our province to invalidate legislation on the ground that an alternative procedure would conserve judicial resources. Under the new incompetency commitment law, a defendant found incompetent to stand trial

may, in the circumstances described above, be committed for up to three years under section 1370 of the Penal Code, and indefinitely thereafter under the LPS Act. Section 1368.1, subdivision (a), declares the Legislature's judgment that a defendant should not be subject to such long-term confinement unless probable cause to believe him guilty of the crime charged is determined by means of a preliminary hearing or grand jury hearing. ■■ ■■■■ The provision being constitutional, it must be upheld.[3]

The writ shall issue as prayed.

McComb, J., Tobriner, J., Mosk, J., and Richardson, J., concurred.

**WRIGHT, C. J.,**—I concur in the judgment.

---

[3]"Decisions of every division of the District Courts of Appeal are binding upon all the justice and municipal courts and upon all the superior courts of this state . . . ." (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) Respondent court was not in violation of this principle when it first held section 1368.1, subdivision (a) unconstitutional because *Chambers* v. *Municipal Court, supra*, 43 Cal.App.3d 809 was not decided until the following month. However, respondent clearly exceeded its jurisdiction when it refused to follow *Chambers* in this and other post-*Chambers* cases. (*Auto Equity Sales, Inc.* v. *Superior Court, supra*, see *People* v. *Rincon-Pineda* (1975) 14 Cal.3d 864, 872 [123 Cal.Rptr. 119, 538 P.2d 247].)