[Crim. No. 29252. Second Dist., Div. Three. Aug. 26, 1977.]

THE PEOPLE, Plaintiff and Appellant, v.
WILLIAM RALPH SNOW, Defendant and Respondent.

**COUNSEL**

John K. Van de Kamp, District Attorney, Donald J. Kaplan and George M. Palmer, Deputy District Attorneys, for Plaintiff and Appellant.

Wilbur F. Littlefield, Public Defender, Harold E. Shabo, Dennis A. Fischer, Charles C. Patton and John L. Ryan, Deputy Public Defenders, for Defendant and Respondent.

**OPINION**

**POTTER, J.**—The People appeal (Pen. Code, § 1238, subd. (a)(1)) from the order setting aside the indictment of defendant William Ralph Snow which charged him with robbery (Pen. Code, § 211) of a bank on January 28, 1972. The superior court granted defendant's motion to set aside the indictment pursuant to Penal Code section 995 "on the grounds that the defendant had been indicted without reasonable [or] probable cause," specifically finding that: (1) "the office of the district attorney did not meet its burden by producing evidence to tend to explain away the

charge and exonerate the defendant"; and (2) "that the Indictment in this case was not sufficient to hold the defendant for trial."

On February 9, 1972, prior to any state proceedings on this matter, defendant was indicted in federal district court for bank robbery (18 U.S.C. § 2113(a)) of the Torrance Branch of the Crocker National Bank. On February 15, 1972, upon defendant's motion, which was joined in by the prosecution, a psychiatrist, Dr. Harold C. Deering, was appointed to examine the defendant, pursuant to title 18, United States Code section 4244, and report to the court "whether:

"(1) the defendant is presently insane; (2) the defendant is presently unable to understand the proceedings against him; (3) the defendant is unable properly to assist in his own defense; (4) what the probable prognosis of mental competency as respects the foregoing questions shall be, whether permanent or temporary in nature; and (5) whether, at the time of the commission of the offense(s) charged against him in this proceeding, the defendant, as a result of mental disease or defect, lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law."[1]

On March 13, 1972, the federal court, after apparently receiving that report, found defendant sane, able to understand the proceedings against him, and able to assist counsel in his behalf. On the prosecutor's motion, an additional psychiatrist, Dr. Marcus Crahan, was appointed to examine the defendant and report on the same matters. On April 18, at the hearing of the "2nd Psychiatrist Report," the federal prosecutor moved for a continuance to April 24 pending dismissal. On April 24, the federal indictment was dismissed on the prosecutor's motion (Fed. Rules Crim.Proc., rule 48, 18 U.S.C.Appen.), apparently upon the basis that both psychiatrists' reports indicated defendant was insane at the time of the commission of the offense.[2]

---

[1] In accord with defendant's request and after notification to both parties, we have taken judicial notice of the 1972 federal district court proceedings on file at the District Court, Central District of California, in the case of *The United States of America v. William Ralph Snow* (9653 CD) which was heard before the Honorable Jesse W. Curtis.

[2] By stipulation, both reports have been made available to this court. They each state the opinion of the examining physician that "[a]t the time of the offense charged, because of mental disorder (schizophrenia), defendant lacked substantial capacity both to appreciate the wrongfulness of his conduct and to conform his conduct to the requirements of the law."

Thereafter, on April 4, 1973, the Los Angeles County Grand Jury returned an indictment against the defendant for one count of robbery arising out of the same incident. At the outset of the grand jury proceedings, the foreman stated:

"The name of the possible defendant is William Ralph Snow.

"Matters to be considered in connection with the above-named possible defendant: Preliminary psychiatric reports indicate that the defendant was insane at the time of the commission of the offense under the Federal Rule.

"If a defendant is found not guilty by reason of insanity in the Federal courts he may go free. That is to say there is no provision under Federal law to place the insane suspect in a mental institution.

"However, it is the case that if the defendant is found not guilty by reason of insanity in the State court, the defendant will be hospitalized for a period of time."

The district attorney then presented four witnesses who testified to the alleged robbery and the apprehension of defendant on January 28, 1972. Each of the witnesses at some point during his testimony identified defendant from a photograph which was later received in evidence. The bank teller, Sylvia Ann Wierzbicki, stated that a man had walked up to her window around 3:15 p.m., and told her "to give him all the cash and to be quiet," while holding a "covered up" object in his right hand. She gave him several hundred dollars "[b]ecause [she] was afraid." The assistant bank manager, James Fournie, testified that after being "alerted" to the holdup, he "proceeded to pursue" the bank robber who had been pointed out to him by another teller.

Deputy Sheriff William Smalley testified that he "observed a subject run from the Crocker Bank" followed by another person (the bank manager) who was chasing him and "yelling loudly." Deputy Smalley and another deputy, Bill Logan, apprehended the suspect after "a foot pursuit." According to Smalley, as the suspect was about to be apprehended, he "stated clearly and loudly, 'I am sorry, I needed the money.'" The officers found "a large amount of currency" and "a screwdriver" on defendant whom they arrested. After the arrest, the suspect "identified himself as William Ralph Snow."

The final witness, F.B.I. Special Agent William J. Rehder, testified that "approximately 20 minutes" later, he and another agent interviewed the defendant. After the F.B.I. agent advised defendant of his rights, defendant signed a waiver, admitted "he was the one who robbed the bank, and . . . proceeded to give [the agents] the details of the robbery." According to Rehder, defendant "said that he was unemployed." Defendant also said "that he was unable to find work that day and that he was passing the bank and he got the idea that since he needed money to live, that it would be rather easy to get the money in a robbery." Agent Rehder described defendant's "attitude" during the interview as "one of cooperation," but "very upset by the fact he was involved in his present predicament." Defendant appeared "to understand the nature of [the] questions"; "his responses" were "consistent"; his "demeanor" was "[s]ober"; there was no "odor of alcohol" discernible; and defendant said that he had not "had anything to drink that day . . . ."

Based on the foregoing testimony, the grand jury returned an indictment of defendant that afternoon and a bench warrant was issued.

On January 13, 1976, defendant was arraigned and pleaded not guilty. On February 19, 1976, Dr. Harold C. Deering and Dr. Marcus Crahan were appointed by the court, pursuant to Evidence Code sections 730 and 1017, to prepare confidential psychiatric reports for the defendant and his counsel.

On July 22, 1976, defendant's motion to set aside the indictment was granted, after argument that centered around the issues whether or not the grand jury and district attorney had met their respective burdens under Penal Code section 939.7 and the California Supreme Court case of *Johnson* v. *Superior Court,* 15 Cal.3d 248 [124 Cal.Rptr. 32, 539 P.2d 792], with respect to the potential defense of insanity.

Penal Code section 939.7 provides: "The grand jury is not required to hear evidence for the defendant, but it shall weigh all the evidence submitted to it, and when it has reason to believe that other evidence within its reach will explain away the charge, it shall order the evidence to be produced, and for that purpose may require the district attorney to issue process for the witnesses."

In *Johnson* v. *Superior Court, supra,* decided September 19, 1975, our Supreme Court held "that when a district attorney seeking an indictment is aware of evidence reasonably tending to negate guilt, he is obligated

under section 939.7 to inform the grand jury of its nature and existence, so that the grand jury may exercise its power under the statute to order the evidence produced. . . ." (*Id.* at p. 255.)

The court expressed its concern that the "Indictment is fatal" because "psychiatric reports that tended to explain the conduct of the defendant" were "not produced at the grand jury" hearing. The court stressed section 939.7 of the Penal Code and the grand jury's duty to obtain evidence to explain away the charge in view of the fact that "the foreman of the grand jury, had knowledge and information that the defendant was incompetent or insane at the time of the commission of the robbery." While the prosecutor claimed that the district attorney had met its burden under *Johnson* v. *Superior Court, supra,* by informing the foreman of the existence of these psychiatric reports, and that the evidence was sufficient before the grand jury to show the offense in question was committed by the defendant, the public defender argued that under *Johnson,* the district attorney was "required to go further" and "present the psychiatrist himself."

The court, as previously indicated, set aside the indictment on the ground that defendant was indicted without reasonable or probable cause and ordered the defendant discharged. On August 13, 1976, the People filed this appeal.

*Issues*

The issues raised on this appeal are: (1) did the rule announced in the 1975 case of *Johnson* v. *Superior Court* apply to the district attorney at a 1973 grand jury hearing? (2) assuming compliance with *Johnson* was required, did the district attorney meet his burden? (3) did the insanity defense constitute "exculpatory evidence" "reasonably tending to negate guilt" and "explain away the charge" which should have been introduced at the grand jury proceeding?

*Discussion*

*Summary*

We have examined the record and conclude that the order setting aside the indictment must be reversed. ▇▇▇ The 1975 rule announced in *Johnson* v. *Superior Court,* 15 Cal.3d 248 [124 Cal.Rptr. 32, 539 P.2d 792], does not apply retroactively to the district attorney's duty at the 1973 grand jury proceeding herein. ▇▇▇ Even if we assume *Johnson's*

retroactive application, the district attorney, in fact, met the duty imposed by *Johnson* by informing the grand jury of the "nature and existence" of evidence indicating possible insanity based on preliminary psychiatric reports. ■ Moreover, the evidence of a defense of legal insanity was not relevant to an indictment proceeding. It was not "exculpatory evidence" "reasonably tending to negate guilt" (*id.* at p. 255) and could not "explain away the charge" (Pen. Code, § 939.7). The factual determination that a person is not guilty by reason of legal insanity at the time of the commission of the offense can be reached only after an admission by plea or a finding of guilt. ■ Evidence of legal insanity, therefore, cannot serve as grounds to set aside an indictment. Thus, the grand jury was not obligated under Penal Code section 939.7 to obtain the psychiatric reports or to subpoena the psychiatrists as defense witnesses. The grand jury proceedings were not defective and defendant was legally committed based on sufficient reasonable cause.

*The Duty of the District Attorney*
*Announced in Johnson v. Superior*
*Court Did Not Apply Retroactively*
*to the 1973 Grand Jury Hearing*

In *Johnson,* our Supreme Court announced a new rule of law creating a duty on the part of the district attorney under Penal Code section 939.7 to inform the grand jury of the nature and existence of exculpatory evidence. The court in *Johnson* did not state whether the rule imposing this obligation should be accorded retroactive or prospective application. In *People* v. *McAlister,* 54 Cal.App.3d 918 [126 Cal.Rptr. 881] (hg. den., Mar. 24, 1976), however, that appellate court held that "the rule of *Johnson* v. *Superior Court* does not apply retroactively to grand jury proceedings antedating the decision." (*Id.* at p. 926.) The *McAlister* court based its decision on the three criteria summarized in *People* v. *Hitch,* 12 Cal.3d 641, 654 [117 Cal.Rptr. 9, 527 P.2d 361]: " ' . . . (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards.' (*Stovall* v. *Denno* (1967) 388 U.S. 293, 297 [18 L.Ed.2d 1199, 1203, 87 S.Ct. 1967].)"

■ We agree with the *McAlister* court that the criteria do not support retroactivity in this case because: (1) the purpose does not vindicate a right essential to insuring reliability of the fact-finding process since the defendant "still has the full opportunity" (54 Cal.App.3d at p. 925) to present this evidence at a trial; (2) "law

enforcement authorities were entitled to act in accordance with their practice preceding [the decision]" (*id.* at p. 926); and (3) "needless repetition of procedures already completed" (*ibid.*) would adversely affect the administration of justice. Accordingly, the district attorney in the 1973 grand jury hearing herein was not required to comply with the requirements later enunciated in *Johnson.* The trial court, therefore, erred by finding that the district attorney failed to meet the burden imposed by *Johnson.*

### The District Attorney Did Inform the Grand Jury of "The Nature and Existence" of Evidence Relating to An Insanity Defense

Even if we assume the *Johnson* decision was retroactive, the prosecution met its duty. The superior court, in granting the motion, specifically found that the "district attorney did not meet its burden [of] producing evidence." There was no such burden. *Johnson* does not impose a duty on the prosecution to produce the evidence or to seek out witnesses. It merely obligates the prosecutor to "bring exculpatory evidence" of which it "is aware" "to the attention of the grand jury" so that that body "may exercise its power . . . to order the evidence produced." (*Id.* at p. 255.) That duty was fully satisfied in the case herein.

The record of the grand jury hearing clearly reveals and the defendant, in effect, admits in his brief, that the grand jury was informed of the "nature and existence" (*ibid.*) of evidence relating to a possible insanity defense. Specifically, the district attorney informed the foreman, who in turn brought to the attention of the members of the grand jury at the outset of the proceedings, the fact that the "[m]atters to be considered in connection with the" case included "[p]reliminary psychiatric reports" indicating "that the defendant was insane at the time of the commission of the offense" by federal standards. The further references to the differences between the federal and state procedures indicated that further federal proceedings in this case had been terminated because of these preliminary psychiatric findings but that state prosecution was not barred since a verdict of not guilty by reason of insanity would generally lead to hospitalization.

Defendant's arguments that the prosecutor "did not fully and fairly disclose evidence which would have explained away the charge" are not persuasive. The information imparted was sufficient to alert the grand

jury to the issue. The prosecutor did not have to inform the grand jury that a particular psychiatrist was available to testify or what specifically Dr. Crahan would say if called as a witness. The grand jury was informed of the existence of the reports and the finding of insanity; if it wished further information, such as the doctors' names or their presence as witnesses, it could inquire of the prosecutor and require him to subpoena the psychiatrists. The information was also substantially accurate. A person found to have been "legally insane" at the time of the commission of the offense is "subject to commitment in a mental institution." (*People* v. *Kelly,* 10 Cal.3d 565, 576, 577-578, fn. 18 [111 Cal.Rptr. 171, 516 P.2d 875]; see also Pen. Code, § 1026; *In re Franklin,* 7 Cal.3d 126 [101 Cal.Rptr. 553, 496 P.2d 465].)[3]

### Evidence of An Insanity Defense Would Not "Negate Guilt"

██ Furthermore, evidence of an insanity defense was not relevant to the grand jury proceedings and neither the district attorney nor the grand jury had any duty to inquire into it. Penal Code section 939.7 only requires the grand jury to order production of evidence which "will explain away the charge." The *Johnson* court held that the prosecution must inform the grand jury of "exculpatory evidence" "reasonably tending to negate guilt." (15 Cal.3d at p. 255.) Evidence of legal insanity, however, is not exculpatory evidence, does not negate guilt, and does not explain away the charge. Rather, it serves to change the legal consequences of guilt after guilt has been established. The fact that a defendant may subsequently be found to have been legally insane at the time of the commission of the offense and thus not liable to punishment under Penal Code section 26, subdivision Three, is not a bar to prosecution.[4] The statutory scheme provides that a defendant must first

---

[3]Nor need the grand jury be informed that a court finding of "present recovery" of sanity could result in the defendant's release. Only after the defendant had been found guilty of the offense by a petit jury in the first (or guilt) phase of a bifurcated trial, and then acquitted because of a finding of legal insanity in the second (or sanity) phase, would this possibility arise. Defendant would be committed to a state hospital unless the *court*, not the jury, which found him not guilty by reason of insanity, determined that defendant had fully recovered his sanity. (Pen. Code, § 1026; *People* v. *Kelly, supra,* 10 Cal.3d at pp. 577-578, fn. 18; see generally *In re Franklin,* 7 Cal.3d 126 [101 Cal.Rptr. 553, 496 P.2d 465].) Since the petit jury is without authority to consider the question of present recovery, it is clearly not the grand jury's function to consider that issue.

[4]In fact, the only type of "insanity" where prosecution, trial and sentence are barred is present insanity, i.e., the defendant's present mental incompetence to stand trial. (See Pen. Code, §§ 1367, 1368, 1368.1.) While there is no issue herein of competency, it is interesting to note that the Legislature has recently expressed its intent that the issue of competency is not to be considered at the grand jury level. Penal Code section 1368.1

be found guilty of committing the offense before the issue of legal sanity at the time of the commission of the offense is reached. (See, e.g., Pen. Code, §§ 1016, 1026.)

 Except where the issue of guilt is eliminated by failure to plead not guilty (Pen. Code, § 1016; *People* v. *Rizer*, 5 Cal.3d 35, 36 [95 Cal.Rptr. 23, 484 P.2d 1367]),[5] insanity is a special defense which can only be raised at a second (or sanity) phase of a bifurcated trial. (Pen. Code, § 1026.) According to Witkin, "[t]he separation of the two stages of the 'bifurcated trial' is solely for the purpose of keeping issues of guilt and sanity distinct." (Witkin, Cal. Criminal Procedure (1963) § 506, p. 513.) This scheme is spelled out in the statutes governing pleas. Unless a defendant pleads not guilty by reason of insanity, he "shall be conclusively presumed to have been sane at the time of the commission of the offense." (Pen. Code, § 1016.) Similarly, when a defendant pleads not guilty by reason of insanity and also joins with it another plea, he shall first be tried on the other plea (e.g., not guilty), and during that guilt phase of the bifurcated trial, the law creates the conclusive presumption of sanity. (Pen. Code, § 1026.) Thus, evidence of the defendant's insanity is not admissible on the issue of guilt.

 The evidence which was available to the grand jury was of this character. The parties have stipulated that the evidence which was available to the grand jury was the opinions of Dr. Deering and Dr. Crahan "that Mr. Snow could not have formed the specific intent to steal because, due to mental disease, he did not know or understand what he was doing or that it was wrong and in violation of the rights of another."[6] According to defendant's brief (p. 11), "[t]his evidence would have shown Mr. Snow to be insane pursuant to California law . . . ."

This description of defendant's mental condition fits the California *M'Naughton* definition for legal insanity at the time of the commission of the offense. Such testimony, however, was not admissible on the issue of defendant's guilt. This is made clear by the decision of our Supreme

provides that a hearing into a felony defendant's mental competence "may not be held until after the information or indictment has been filed." (Pen. Code, § 1368.1, subd. (a).) Our Supreme Court has upheld the constitutionality of this provision against a due process attack in *Hale* v. *Superior Court,* 15 Cal.3d 221 [124 Cal.Rptr. 57, 539 P.2d 817].

[5]For this reason, the single plea of not guilty by reason of insanity can only be accepted in accordance with *Boykin-Tahl* procedures whereby defendant is advised and expressly waives his constitutional rights to trial by jury on the issue of guilt, to confrontation of witnesses, and to remain silent. (*People* v. *Rizer, id.* at pp. 37-38.)

[6]This language was taken from defendant's brief, page 11.

Court in *People* v. *Wells,* 33 Cal.2d 330, 350-351 [202 P.2d 53], where the court said: "The fundamental rule above stated, with its qualification, is, therefore, as follows: As a general rule, on the not guilty plea, evidence, otherwise competent, tending to show that the defendant, who at this stage is conclusively presumed sane, either *did* or *did not,* in committing the overt act, possess the specific essential mental state, is admissible, but evidence tending to show legal sanity or legal insanity is not admissible. *Thus, if the proffered evidence tends to show not merely that he did or did not, but rather that because of legal insanity he could not, entertain the specific intent or other essential mental state, then that evidence is inadmissible under the not guilty plea and is admissible only on the trial on the plea of not guilty by reason of insanity.* The standard by which the trial judge must appraise the admissibility of evidence in every case is, of course, the familiar 'right or wrong' standard hereinabove quoted, by which legal insanity as a defense is gauged. Evidence which tends to show legal insanity (likewise, sanity) is not admissible at the first stage of the trial because it is not pertinent to any issue then being litigated; but competent evidence, other than proof of sanity or insanity, which tends to show that a (then presumed) legally sane defendant either did or did not in fact possess the required specific intent or motive is admissible." (Italics added; see also *People* v. *Nicolaus,* 65 Cal.2d 866, 881 [56 Cal.Rptr. 635, 423 P.2d 787]; *People* v. *Yanikian,* 39 Cal.App.3d 366, 374-376 [114 Cal.Rptr. 188].)

The evidence which defendant claims was available to the grand jury was precisely that kind of evidence which *Wells* held inadmissible on the issue of guilt. It, therefore, could not be "exculpatory evidence," reasonably tending to negate guilt nor could it be evidence which would "explain away the charge."

Thus, there is no basis for defendant's claim that failure to consider this evidence rendered the indictment defective.

The order setting aside the indictment is reversed.

Cobey, Acting P. J., concurred.

Allport, J., concurred in the reversal.

A petition for a rehearing was denied September 13, 1977. Allport, J., was of the opinion that the petition should be granted. Respondent's petition for a hearing by the Supreme Court was denied November 3, 1977.