[Civ. No. 51630. First Dist., Div. Four. Sept. 1, 1981.]

FIKRI BAYRAMOGLU, Petitioner, v.
THE SUPERIOR COURT OF MARIN COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Ruth L. Young, Public Defender, Gaile O'Connor and Douglas I. Horngrad, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien and William D. Stein, Assistant Attorneys General, W. Eric Collins, Herbert F. Wilkinson and Dane R. Gillette, Deputy Attorneys General, for Real Party in Interest.

OPINION

**RATTIGAN, J.**—Petitioner Fikri Bayramoglu was charged by complaint with the crime of murder. After a preliminary examination, a magistrate held him to answer to the charge in respondent court. When an information accusing him of murder was filed, respondent court suspended the proceedings pending a determination of his present mental competence pursuant to Penal Code section 1368. The issue was tried by a jury, which found that he was competent to stand trial on the murder charge. He thereupon moved the court for an order setting aside the information, pursuant to Penal Code section 995, on the ground that he had not been legally committed by the magistrate because he had been mentally incompetent when the preliminary examination was conducted. He also requested an evidentiary hearing on the issue of his past incompetence as alleged.

Respondent court denied the motion without conducting the requested hearing. Petitioner now seeks an appropriate writ which would require the court to grant the motion or to conduct the hearing.

## The Record

The record made on the section 995 motion included a sworn declaration by petitioner's attorney in which she summarized the procedural sequence of his prosecution and described the preliminary examination; the magistrate's minutes and a reporter's transcript of the examination; and psychiatric reports on petitioner which had been filed in the superior court before the motion was heard. These sources support the recitals captioned below.

## The Preliminary Examination

In a complaint filed in the Municipal Court for the Central Judicial District of Marin County on April 22, 1980, petitioner was charged with having murdered Tracy Lee Jones on April 17 in violation of section 187 of the Penal Code.[1] A preliminary examination was conducted in that court on May 20. The prosecution presented evidence supporting the inferences that petitioner had shot and killed Tracy Lee Jones on April 17, and that he had then attempted to commit suicide. Petitioner presented no evidence. The magistrate ordered him held to answer for murder as charged in the complaint.

Petitioner's behavior was aberrant and disruptive throughout the preliminary examination. He appeared in shackles, which the magistrate ordered removed over the objection of a custodial officer who stated that petitioner had "allegedly committed some injuries upon himself." Petitioner then addressed the magistrate in a rambling discourse on irrelevant subjects. He also expressed dissatisfaction with his attorney (a deputy public defender), and said that he did not "want to live."

The magistrate conducted an *in camera* hearing on petitioner's complaints about his attorney. Petitioner and the attorney were present at the *in camera* hearing, but the magistrate excluded the prosecutor on defense counsel's representation that "it would be appropriate to conduct the inquiry in that way in order that the court may satisfy itself as to the ground or lack of grounds for Mr. Bayramoglu's dissatisfaction and simultaneously protect him and his privilege against self-incrimination."

---

[1]Dates mentioned refer to the calendar year 1980 except where another year is shown. Statutory references are to the Penal Code.

The magistrate made no order or comment after the *in camera* hearing had been concluded. When the preliminary examination was resumed at that point, petitioner interrupted and berated the prosecution's first witness. Moments later, he leaped from his chair and struggled with officers in a noisy and violent episode. When he had been subdued, he complained that he had been hit "on the head" and that "they will kill me in the jail." The magistrate called an early recess for lunch "[s]o that everyone can calm down," and ordered petitioner examined by a physician.

When the proceedings were convened after the recess, the magistrate reported that petitioner had been examined as directed and that he had "no significant injuries as a result of any event this morning whatsoever." He was less obstreperous during the afternoon session, but he again interrupted the proceedings on several occasions. In the public phases of the preliminary examination, no one referred at any time to the possibility that he was not mentally competent.

### The Section 1368 Proceedings

The information charging petitioner with murder was filed in respondent court on June 2. When he appeared for arraignment on June 3, the court appointed the public defender to represent him; suspended the criminal proceedings; and made orders appointing Drs. Gutstadt and Blinder as "Medical Examiners" and directing them to examine petitioner "to determine his mental competency *at the present time*" (italics added) and "to report . . . to the court . . . prior to June 23 . . . ." The record does not include a reporter's transcript of these proceedings, but it shows without dispute that the court acted pursuant to section 1368.[2]

---

[2]The statutory scheme thus invoked includes sections 1368, 1368.1, 1369, 1370, and 1372. For purposes of reference to them in this opinion, they are here quoted or summarized in pertinent part as follows:

"1368. (a) If, during the pendency of an action and prior to judgment, a doubt arises in the mind of the judge as to the mental competence of the defendant, he shall state that doubt in the record and inquire of the attorney for the defendant whether, in the opinion of the attorney, the defendant is mentally competent. If the defendant is not represented by counsel, the court shall appoint counsel. At the request of the defendant or his counsel or upon its own motion, the court shall recess the proceedings for as long as may be reasonably necessary to permit counsel to confer with the defendant and to form an opinion as to the mental competence of the defendant at that point in time.

"(b) If counsel informs the court that he believes the defendant is or may be mentally incompetent, the court shall order that the question of the defendant's mental competence is to be determined in a hearing which is held pursuant to Sections 1368.1

Petitioner had meanwhile been confined in the Marin County jail. He was transferred from there to Atascadero State Hospital on June 10, before either court-appointed psychiatrist could examine him. He remained at Atascadero until June 25, when he was returned to the jail. Drs. Gutstadt and Blinder examined him separately, and filed written reports with the court, during the month of July.

Dr. Gutstadt reported that petitioner had been transferred to Atascadero State Hospital "for his own protection" because his behavior in the jail had been "psychotic, agitated, and uncontrollable," and he had "appeared to be compulsed [*sic*] to kill himself." Dr. Gutstadt further stated, however, that "[a]t this point . . ., there is no evidence to suggest that the manifestations of Mr. Bayramoglu's psychotic process are such that he is unable to understand the nature of the proceedings against him or that he is unable to cooperate with his attorney and assist in his own defense."

---

and 1369. If counsel informs the court that he believes the defendant is mentally competent, the court may nevertheless order a hearing. Any hearing shall be held in the superior court.

"(c) Except as provided in Section 1368.1, when an order for a hearing into the present mental competence of the defendant has been issued, all proceedings in the criminal prosecution shall be suspended until the question of the present mental competence of the defendant has been determined. . . ."

"1368.1. (a) If the action is on a complaint charging a felony, the hearing to determine mental competence may not be held until after the information or indictment has been filed. A demurrer or motion under Section 995 or 1538.5 may thereafter be made by counsel for the defendant, even though a proceeding to determine the defendant's mental competence is pending.

". . . . . . . . . . . . . . . .

"(c) In ruling upon any demurrer or motion described in subdivision (a) . . ., the court may hear any matter which is capable of fair determination without the personal participation of the defendant. . . ."

Section 1369 specifies the "order" in which "[a] trial by court or jury of the question of mental competence shall proceed . . . ."

"1370. (a)(1) If the defendant is found mentally competent, the criminal process shall resume, the trial on the offense charged shall proceed, and judgment may be pronounced. If the defendant is found mentally incompetent, the trial or judgment shall be suspended until the person becomes mentally competent, and the court shall order that (i) in the meantime, the defendant be delivered by the sheriff to a state hospital . . . or to any other . . . facility approved by the county mental health director which will promote the defendant's speedy restoration to mental competence . . . and (ii) upon the filing of a certificate of restoration to competence, the defendant be returned to court in accordance with the provisions of Section 1372. . . .

"1372. (a)(1) If the medical director of the state hospital or other facility to which the defendant is committed . . . determines that the defendant has regained mental competence, such director shall immediately certify that fact to the court.

"(2) Upon the filing of a certificate of restoration, the defendant shall be returned to the committing court in . . . [a] . . . manner . . . [specified in detail] . . . ."

Dr. Blinder reported his opinions that petitioner was "clearly psychotic," and that his understanding of the charges against him, and his ability to participate in the court proceedings and to cooperate with counsel, were "intermittent and rather tenuous—sufficient for him to be found insane within the meaning of Section 1368 . . . ." Dr. Blinder deferred to the judgment of petitioner's attorney in some respects, but he recommended that petitioner "be found mentally incompetent for reasons stated in Section 1368 . . . ."

In August, on motion by petitioner's attorney, the trial court relieved her as defense counsel and appointed another attorney to represent petitioner in the section 1368 proceedings. A jury trial on the issue of his competence was commenced on October 2. He called as witnesses his original attorney, Drs. Blinder and Gutstadt, and two other experts. In a verdict returned on October 7, the jury found that "the defendant *is* mentally competent to be tried for the criminal offense charged against him." (Italics added.)

Petitioner was arraigned on the information two days later. His original (and present) attorney again appeared as defense counsel. He entered pleas of not guilty and not guilty by reason of insanity. Pursuant to section 1027, respondent court made orders appointing Drs. Blinder and Gutstadt as "Medical Examiners" and directing them to examine petitioner and report to the court.

### The Section 995 Motion

Petitioner's motion for an order setting aside the information, pursuant to section 995, was filed on November 14. It was made on the ground that he "had not been legally committed by the magistrate"[3] because he had been incompetent, "as a result of mental disorder," when the preliminary examination was conducted on May 20. The moving papers included an express request for an evidentiary hearing "on the issue of his competency" at that time.

On January 5, 1981, before petitioner's motion was heard, Drs. Blinder and Gutstadt filed separate written reports in which each stated

---

[3]Section 995 provides in pertinent part: "The indictment or information must be set aside by the court in which the defendant is arraigned, upon his motion, in either of the following cases: . . . If it be an information: 1. That before the filing thereof the defendant had not been legally committed by a magistrate. . . ."

that he had reexamined petitioner pursuant to the orders made in the arraignment proceedings. Each reported his conclusion that petitioner had been psychotic when the homicide was committed and afterward.[4]

The motion was heard on January 9, 1981. Petitioner's attorney made an extensive oral presentation of the events summarized above. She referred to a sealed transcript of the *in. camera* hearing conducted by the magistrate during the preliminary examination, and asked respondent court to read it. She also asked leave to present testimony by one Jan Jackson, whom she identified as "the Criminal Justice Supervisor of the Mental Health Department." Counsel explained that Jackson had spent an hour and a half with petitioner during the recess after the disruptive episode at the preliminary examination, that she (Jackson) was consequently "one of the few percipient witnesses to his mental state" at that time, and that she would testify to her observations. The court stated that "I have to first determine whether or not a hearing should be granted." The motion was thereupon taken under submission.

On January 12, 1981, the court denied the motion in a minute order which stated only that "Defendant's motion to set aside the information filed herein November 14, 1980 is denied." The court explained this ruling in a "Supplemental Minute Order" filed later on the same day.[5]

Petitioner commenced the present proceeding by filing a timely "Petition For Writ Of Prohibition, And/Or Mandamus ..." in this court. We stayed further proceedings below and issued an alternative writ of mandate. The Attorney General has filed a return on behalf of the People as real party in interest.

---

[4]Dr. Blinder stated in pertinent part: "Psychiatric Diagnosis: Paranoid schizophrenia.... It is equally clear that *after* the homicide and attempted suicide,... [petitioner's] ... thought processes ... were grossly contaminated by psychosis.... [T]here is much clinical evidence ... that he was a paranoid schizophrenic,... [and] ... that he was floridly *psychotic following the homicide....*" (Italics added.)

Dr. Gutstadt reported in pertinent part: "... [I]t is my opinion that ... [petitioner] ... was grossly psychotic at the time that he shot Tracy Jones and that the homicide was the product of his delusional thinking. ... As is already known, *the psychosis persisted*, leading to three later suicide attempts and his subsequent transfer from the jail to Atascadero State Hospital and treatment there. The diagnosis would be schizophrenic psychosis, chronic, paranoid type." (Italics added.)

[5]The text of this order reads: "The court did not read or consider the sealed transcript of the in camera hearing May 20, 1980. The court concluded the defendant is not entitled to a hearing at this time on the issue of his competency at the time of the preliminary hearing as PC 1368 proceedings have been heard and completed."

*Review*

██ ██ The conduct of a preliminary examination when the defendant is mentally incompetent violates his right to due process of law. (*Hale* v. *Superior Court* (1975) 15 Cal.3d 221, 228 [124 Cal.Rptr. 57, 539 P.2d 817]; *Stevenson* v. *Superior Court* (1979) 91 Cal.App.3d 925, 930 [154 Cal.Rptr. 476]; *Chambers* v. *Municipal Court* (1974) 43 Cal.App.3d 809, 813 [118 Cal.Rptr. 120].) He is nevertheless unable to demonstrate his incompetence, as a bar to the preliminary examination before it occurs, because proceedings "to determine mental competence may not be held until after the information ... has been filed." (§ 1368.1, subd. (a); *Hale* v. *Superior Court, supra,* at p. 226.) If he is found to be incompetent in such proceedings conducted after the information has been filed, he is entitled to have the information set aside, on his subsequent motion made pursuant to section 995, on the ground that he has not been lawfully committed. (*Miller* v. *Superior Court* (1978) 81 Cal.App.3d 132, 134-137 [146 Cal.Rptr. 253]; see *Chambers* v. *Municipal Court, supra,* 43 Cal.App.3d 809.)

██ The converse situation is presented here because petitioner was found to be competent in the section 1368 proceedings conducted in respondent court. After it had been determined in those proceedings that he was *presently* competent for purposes of section 1368, he made his section 995 motion on the ground that he had not been "legally committed" by the magistrate because he had not been competent when his preliminary examination was conducted *previously.* The first question is whether he waived the right to make the section 995 motion, on that ground, when he waited as described.

Section 1368, subdivision (c), provides that "an order for a hearing into the present mental competence of the defendant" shall operate to suspend "all proceedings" in his prosecution "[e]xcept as provided in Section 1368.1." Section 1368.1, subdivision (a), provides in pertinent part that he "may" make a motion pursuant to section 995 "even though" a proceeding to determine his mental competence is "pending." In the context of the statute, the word "may" imports that he is *permitted* to make a section 995 motion while section 1368 proceedings are pending but that he is not *required* to do it at that time. (See *Ostrander* v. *City of Richmond* (1909) 155 Cal. 468, 470 [101 P.452]; *In re Marriage of Banks* (1974) 42 Cal.App.3d 631, 634 [117 Cal.Rptr. 37]; compare *Uhl* v. *Badaracco* (1926) 199 Cal. 270, 282 [248 P. 917].) There is accordingly nothing in the statutory scheme commanding the

conclusion that he waives the right to make the motion if he waits until the section 1368 proceedings are concluded.

The defendant in *Miller* allowed section 1368 proceedings to run their course without making a section 995 motion, but they produced a determination that he was currently incompetent for purposes of section 1368 and he made a section 995 motion after he had subsequently been found competent and his prosecution had been resumed in the superior court. (See *Miller v. Superior Court, supra*, 81 Cal.App.3d 132 at p. 134.) *Miller* therefore sheds no light on the present question of waiver because it did not arise in that case. It did not arise in *Hale* or *Chambers* because the issue decided in each case was joined before section 1368 proceedings were commenced. (See *Hale v. Superior Court, supra*, 15 Cal.3d 221 at p. 223; *Chambers v. Superior Court, supra*, 43 Cal.App.3d 809 at p. 811.)

In *Hale*, however, the defendant claimed a denial of due process in the operation of the language of section 1368.1, subdivision (a), which the Supreme Court described as providing that "a hearing into a felony defendant's mental competency may not be held until an indictment or information has been filed against him." (*Hale v. Superior Court, supra*, 15 Cal.3d 221 at p. 223.) The court rejected this claim, holding that "[r]ather than denying due process, the statute promotes it by insuring that a felony defendant will not be committed for incompetency unless there is *probable cause* to believe he committed the crime with which he is charged." (*Hale v. Superior Court, supra*, italics added.)

The *Hale* holding effectively establishes that the provision of section 1368.1, subdivision (a), which authorizes a felony defendant to make a section 995 motion notwithstanding the pendency of section 1368 proceedings, was intended by the Legislature to permit him to challenge the information on the second ground provided in section 995—i.e., that he has been "committed without ... probable cause" (see fn. 5, *ante*)—with a view to avoiding commitment pursuant to section 1368 if his challenge on that ground is sustained and his prosecution is terminated accordingly. (See *Hale v. Superior Court, supra*, 15 Cal.3d 221 at p. 226; Parker, *California's New Scheme For The Commitment Of Individuals Found Incompetent To Stand Trial* (1975) 6 Pacific L.J. 484, 490, 496; *Review of Selected 1974 California Legislation* (1975) 6 Pacific L.J. 125, 276.) It follows that he does not waive his right to challenge the information on the first ground provided in section

995—i.e., that he was not "legally committed" by the magistrate (see fn. 5)—if he defers to the section 1368 proceedings and makes his section 995 motion, on that ground, after they have been concluded. This is what petitioner did. He did not waive his right to make the motion by waiting.

■ The second question is whether the determination that petitioner was competent, reached in the section 1368 proceedings, foreclosed him from asserting on the section 995 motion that he had been incompetent when his preliminary examination was conducted five months earlier. The statutory scheme includes no language commanding this result, and it explicitly provides that section 1368 proceedings are to be commenced after a preliminary inquiry concerning "the mental competence of the defendant *at that point in time*." (§ 1368, subd. (a), italics added.) It also includes an explicit provision that the issue to be determined in the section 1368 proceedings is "the question of the *present* mental competence of the defendant . . . ." (§ 1368, subd. (c), italics added.) Respondent court's order appointing Drs. Gutstadt and Blinder, on June 3, consequently directed them to examine petitioner "to determine his mental competency *at the present time* . . . ." (Italics added.) The reports they filed in July were framed in the present tense, and neither referred to petitioner's competence when the preliminary examination was conducted in May.

The statutory scheme is also explicit in contemplating that a finding that a defendant is mentally incompetent at one point (i.e., at a given "point in time"), which will result in the suspension of his prosecution, may be followed by his "restoration to competence" which will require its resumption. (See § 1370, subd. (a)(1); § 1372, subds. (a)(1) and (a)(2); see also § 1370, subd. (b)(1) [providing for periodic examinations of a committed defendant and reports on his "progress toward recovery of mental competence"].) The scheme thus demonstrates an acknowledgement by the Legislature that mental incompetence may be intermittently episodic, and mental competence intermittently recurrent, in the context of a criminal prosecution. It follows that an adjudication that a defendant *is* competent at one point in his prosecution (i.e., at one "point in time") does not establish that he *was* competent at another. The result reached in the section 1368 proceedings therefore did not foreclose petitioner from subsequently challenging the information on the ground that he had been incompetent when the preliminary examination was conducted.

At least one of the first psychiatric reports on petitioner expressly supported an inference that his mental competence in July was "intermittent." The later reports supported an inference that he had been incompetent ("psychotic") between the commission of the homicide in April and his transfer to Atascadero State Hospital in June. (See fn. 4, *ante.*) The preliminary examination was conducted during that period. The record of the examination, and counsel's account of it, supported a specific inference that petitioner was incompetent on May 20. In sum, his section 995 motion was accompanied by a substantial prima facie showing that he was mentally incompetent when the preliminary examination was conducted. If he can establish that fact, the motion should be granted on the ground that he "had not been legally committed" by the magistrate. (§ 995; see *Hale* v. *Superior Court, supra,* 15 Cal.3d 221 at p. 228; *Stevenson* v. *Superior Court, supra,* 91 Cal.App.3d 925 at p. 930; *Miller* v. *Superior Court, supra,* 81 Cal.App.3d 132 at pp. 134, 137; *Chambers* v. *Municipal Court, supra,* 43 Cal.App.3d 809 at p. 813.) He is entitled to an evidentiary hearing, on the motion, at which he may present testimony and other evidence to establish the fact.

An evidentiary hearing on the section 995 motion will be conducted pursuant to the writ of mandate ordered below. The sealed transcript of the *in camera* hearing before the magistrate was made available to this court at oral argument. Respondent court has not read it (see fn. 5, *ante*), and the People objected to our inspecting it on the ground that they should be entitled to see it and to cross-examine on its contents. Whether it should be read for evidence of petitioner's mental competence on May 20, and the People's objection, are matters to be decided in the discretion of respondent court when the evidentiary hearing is conducted.

A peremptory writ of mandate will issue commanding respondent court to set aside its order denying the section 995 motion and to conduct further proceedings consistent with this opinion.

Caldecott, P. J., and Poché, J., concurred.

A petition for a rehearing was denied September 30, 1981, and the petition of real party in interest for a hearing by the Supreme Court was denied October 28, 1981.