[Crim. No. 7915. Third Dist. Jan. 27, 1976.]

THE PEOPLE, Plaintiff and Appellant, v.
BRUCE DAVID McALISTER, Defendant and Respondent.

**COUNSEL**

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Joel Carey, Eddie T. Keller and Carole Bartlett Hogan, Deputy Attorneys General, for Plaintiff and Appellant.

Bell & Sandberg, Bell & Eubanks and Thomas W. Bell, Jr., for Defendant and Respondent.

**OPINION**

**PARAS, J.**—Pursuant to section 1238 of the Penal Code, the People appeal from an order of the Sacramento County Superior Court setting aside four counts of a five-count grand jury indictment on the alternative grounds that either (1) the district attorney failed to inform the grand jury of alibi witnesses whose statements tended to negate the charges against the defendant, or (2) if these witnesses were brought to the attention of the grand jury, it abused its discretion by failing to subpoena them.

The following evidence was presented to the grand jury:

On January 10, 1974, Linda H., a student, attended an evening ski club class at California State University, Sacramento. About 7:15 p.m. she went to the ladies' rest room. As she was leaving, she was confronted by a man at the door who pushed her against the wall and backed her into the main area of the rest room with a knife at her throat. The man ordered her into a bathroom stall, turned her around (still holding the knife at her throat), and told her to remove her clothes. The rest room was lighted, and the man's face was uncovered. He forced her to remove her sweater and began handling her breasts. He then told her to pull down her pants, after which he touched her breasts and vagina. He asked her if she had ever been raped or done a "blow job." She responded that she had not and said that she was then in her menstrual period. The man had her sit on the toilet stool, ordered her to copulate him orally and pushed her head down to his penis; the act was performed. Linda H. identified a photograph of defendant as the culprit.

On January 15, 1974, Judy A. left the bookstore at the same university and went to her car in the public parking lot. There a man approached her from behind and put one hand on her shoulder and the other underneath her dress between her legs in the area of the vagina. She turned around quickly and the man rushed away. She identified a photograph of defendant as the man who accosted her.

On February 6, 1974, Linda W. was working at the Hornet Ink Shop on the same campus. About 1:30 p.m. she went to the ladies' rest room. As she walked in, she noticed a pair of hiking boots being raised above the bottom edge of the door in one of the bathroom stalls, as if someone was attempting to keep them out of view. She went into a toilet stall and closed the door. As she was preparing to leave, she noticed a pair of eyes staring at her through the crack in the door. When she asked if the person was looking for someone, a male voice replied, "I just want to see your pussy." The man then started to enter, carrying a jacket which he attempted to place over her head. She jumped up, pulled up her trousers, slapped at the jacket, shoved the man against the wall, and started cursing loudly at him. He ran out of the rest room and out of the building with her "right on his tail." She chased him 500 or 600 yards before he was apprehended by two male students. She identified defendant's photograph at the grand jury hearing.

On August 27, 1974, the grand jury returned the challenged indictment against defendant; it contained five counts.

(1) Penal Code section 220—Assault with intent to rape Linda H.

(2) Penal Code section 245—Assault with a deadly weapon on Linda H.

(3) Penal Code section 288a—Oral copulation with Linda H.

(4) Penal Code section 647a—Lewd and dissolute conduct with Judy A.

(5) Penal Code section 220—Assault with intent to rape Linda W.

The grand jury proceedings of August 27, 1974, were preceded by several earlier actions. On February 21, 1974, defendant was accused by complaint of all of the above crimes except the section 288a of the Penal Code violation (third count) and was additionally charged with assault with intent to rape Judy A. (Pen. Code, § 220.) A preliminary hearing was held on April 19, 1974. At the conclusion thereof, defendant was held to answer to the charges as to Linda H. and Linda W. (and an additional charge as to Linda H. of Pen. Code, § 288a, the facts of which were first revealed during the hearing). As for the charges involving Judy A., the magistrate found insufficient evidence to support the felony charge of assault with intent to rape (Pen. Code, § 220), but sufficient evidence to support a misdemeanor battery charge in lieu thereof. (Pen. Code, § 242.) Accordingly, he did not hold defendant to answer as to the offenses involving Judy A., but suggested to the district attorney that he take proper action relative to the charging of misdemeanors as to this conduct.

On May 2, 1974, the district attorney filed an information in superior court charging defendant with the charges sustained by the magistrate as to Linda H. and Linda W., and with a violation of section 647a of the Penal Code as to Judy A. He did not include the battery charge suggested by the magistrate as to Judy A. On August 23, 1974, the superior court granted a motion to strike the section 647a of the Penal Code charge as to Judy A.; the record does not indicate the basis for this action.[1] Four days later, on August 27, 1974, the district attorney sought

---

[1] The dismissal was probably based upon a lack of jurisdiction of the superior court over a misdemeanor. (Cal. Const., art. VI, § 5; *In re Joiner* (1960) 180 Cal.App.2d 250 [4 Cal.Rptr. 667].)

and obtained the grand jury indictment which is the subject of this appeal. The indictment is identical to the information (which was thereafter dismissed by the district attorney) except that it reinstates the charge of section 647a of the Penal Code as to Judy A.

Counsel for defendant learned on the afternoon of August 27, 1974, that a grand jury indictment would be sought that evening. He promptly drafted a letter addressed to "Sacramento County Grand Jury and The Honorable Frank G. Finnegan [advisor to the grand jury], Sacramento County Superior Court," a copy of which was appended as an exhibit to defendant's later motion to set aside the indictment.[2] The motion contained no affidavit or declaration as to the manner in which the letter

[2] The letter reads as follows:
"Gentlemen, Ladies and Judge Finnegan:
"As defense counsel for Bruce David McAlister, I herewith submit to you the following information pursuant to *Penal Code*, Section 939.7, found within Article 4, Chapter 3 entitled, 'Powers and Duties of Grand Jury'.
"A preliminary hearing was conducted in the above-entitled matter pursuant to the filing of an amended complaint by the Sacramento County District Attorney's Office on February 21, 1974, said amended complaint bearing the number 21907F, wherein the defendant was accused of five offenses. On Friday, April 19, 1974, a preliminary hearing was held in connection with the aforesaid complaint at which time the District Attorney's Office was represented by Roger M. Miller and the defendant was represented by Donald Dorfman. At the conclusion of said preliminary hearing, the committing magistrate, the Honorable Sheldon H. Grossfeld found that Count 4 of said amended complaint was a misdemeanor, an unrelated offense and transferred said Count back to the Municipal Court for disposition as a misdemeanor. Nonetheless, the Sacramento County District Attorney's Office charged the defendant in Information 44606 with the aforesaid Count 4 and on August 23, 0974 [*sic*], the Honorable B. Abbott Goldberg granted the defendant's motion to strike Count 4 from the aforesaid information.
"Furthermore, the District Attorney's Office has been supplied with the names of material and competent witnesses with regard to the whereabouts of the defendant on January 10, 1974 and on January 15, 1974. Specifically, the District Attorney's Office has interviewed one, Charles Edmund Friedrich, who unequivocally states that he and the accused were together on the afternoon of January 15, 1974, during the alleged time that Judy . . . was 'assaulted'. Furthermore, specifically, the District Attorney's Office has interviewed the defendant's mother and brother and has been furnished the telephone number of defendant's grandmother, all of whom unequivocally have stated that on the evening of January 10, 1974, at the time of the incident involving Linda . . . the defendant was at home with the family and was specifically watching a National Geographic special entitled, 'Mission Outward-Bound', and was also watching the program entitled 'Kung Fu', at said location (home) from at least 6:00 P.M. to 10:00 P.M. on the evening of January 10, 1974.
"Furthermore, the defendant was examined by one, Donald S. Frick, a highly qualified and well-recognized polygraph examiner, as to the incidents involving Judy . . . Linda . . . and Linda . . . . The District Attorney's Office has been afforded an opportunity to examine Mr. Frick's report and had rejected the defendant's offer to submit himself to an extensive polygraph examination by a qualified polygraph examiner chosen by the District Attorney, subject to the condition that the District Attorney stipulate to the admissibility at trial of the polygraph examination by Mr. Frick, including testimony from Mr. Frick; *that the defendant will stipulate that the results of the District Attorney's*

was delivered. At the hearing on the motion, counsel stated to the court: "I did submit a letter to Judge Finnegan's clerk. Had the Grand Jury reviewed it or not, I don't know." The district attorney was not asked, nor did he volunteer any information as to whether the letter was received by the grand jury prior to or during its deliberations. The grand jury transcript makes no mention of it.

On the basis of this letter, the trial court on October 15, 1974, granted the motion to set aside the indictment as to all counts except the charge of assault with intent to rape Linda W. (5th count). The court based its order upon this court's opinion in *Johnson* v. *Superior Court,* filed May 2, 1974; the Supreme Court granted a hearing in that case on July 31, 1974, and our opinion therefore had been vacated and was of no precedential value (Cal. Rules of Court, rule 977) at the time of the court's ruling.

On September 19, 1975, the Supreme Court decided *Johnson* v. *Superior Court* (1975) 15 Cal.3d 248 [124 Cal.Rptr. 32, 539 P.2d 792], stating its holding as follows: "We hold, therefore, that when a district attorney seeking an indictment is aware of evidence reasonably tending to negate guilt, he is obligated under section 939.7 to inform the grand jury of its nature and existence, so that the grand jury may exercise its

---

Office's polygraph examination be likewise admissible at trial and that both Mr. Frick and the District Attorney's Office's examiner have the opportunity to review and inspect each other's polygraph charts.

"Furthermore, the District Attorney's Office has had the opportunity to inspect and copy a psychiatric examination report conducted upon the person of the defendant by Dr. John A. Mitchell at 5301 F Street, Sacramento, California, a highly respected and often-used psychiatrist, by both the District Attorney's Office and the Courts of Sacramento County, which examination is entirely favorable to the defendant, from a psychiatric standpoint, with regard to his propensity to commit any of the acts alleged against him.

"Furthermore, Linda . . . was unable to identify the defendant during the preliminary hearing as he sat in the courtroom. In addition, the methods used by the 'California State University, Sacramento Police Department, insofar as having Mrs. . . . and Miss . . . identify the defendant some thirty to fifty days after the alleged incident involving them, was unduly and highly suggestive in that they were shown colored photographs of five subjects, all of which photographs had numbers on the front of said photographs, being numbered one through five, and the photograph of the accused bearing number four and being placed in the middle of the aforesaid five photographs, which had been displayed on the top of a table.

"Also, one Mary Gomes and one, Katherine Holman [witnesses to the Linda W. incident] were shown the same five photographs and picked out photographs of persons other than the defendant.

"On behalf of Mr. Bruce David McAlister, I herewith submit the above information for your consideration during the proceedings before the Grand Jury on this same evening, our office having learned of the Grand Jury proceedings only early this same afternoon."

power under the statute to order the evidence produced." (15 Cal.3d at p. 255.)

Three questions are presented. Is *Johnson* retroactive so as to apply to this case? If so, was *Johnson* complied with? What is the extent of the grand jury's obligation under *Johnson*?

I

■ The relevant criteria to be considered in determining whether a new rule of criminal law or procedure should be applied retroactively are summarized in *People* v. *Hitch* (1974) 12 Cal.3d 641, 654 [117 Cal.Rptr. 9, 527 P.2d 361]: " '. . . (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards.' (*Stovall* v. *Denno* (1967) 388 U.S. 293, 297 [18 L.Ed.2d 1199, 1203, 87 S.Ct. 1967].)"

Foremost among these is the purpose to be served by the new rule. (*Desist* v. *United States* (1969) 394 U.S. 244, 249 [22 L.Ed.2d 248, 255, 89 S.Ct. 1030].) The other two factors are relied upon heavily only when the purpose of the rule does not clearly favor either retroactivity or prospectivity. (*Desist* v. *United States, supra,* at p. 251 [22 L.Ed.2d at p. 256].) ■ Where the purpose of the rule overwhelmingly supports prospective application only, prospective application will be accorded even if relatively few cases would be set aside by retroactive application. (*Desist* v. *United States, supra,* at pp. 251-252 [22 L.Ed.2d at pp. 256-257]; *People* v. *Hernandez* (1970) 11 Cal.App.3d 481, 496 [89 Cal.Rptr. 766].) On the other hand, where the purpose of the rule vindicates a right which is essential to ensuring the reliability of the fact-finding process, the rule will be given fully retroactive effect. (See cases collected in *Adams* v. *Illinois* (1972) 405 U.S. 278, 280 [31 L.Ed.2d 202, 206-207, 92 S.Ct. 916]; *In re Johnson* (1970) 3 Cal.3d 404, 411 [90 Cal.Rptr. 569, 475 P.2d 841].)

■ The denial of the right to have the existence of potential defense evidence revealed at a grand jury hearing by the prosecution does not affect the ultimate integrity of the truth-determining process. The accused still has the full opportunity to present all of this evidence at trial and still needs only to raise a reasonable doubt as to his guilt in order to escape conviction. Thus the first criterion does not support retroactivity.

Nor do the second and third. There being no law of the *Johnson* case in effect prior to September 19, 1975, law enforcement authorities were entitled to act in accordance with their practice preceding it; and it goes without saying that the administration of justice is adversely affected by needless repetition of procedures already completed.

Therefore, based upon a consideration of all three criteria of *People* v. *Hitch, supra,* 12 Cal.3d 641, we hold that the rule of *Johnson* v. *Superior Court* does not apply retroactively to grand jury proceedings antedating the decision.

## II

Even if *Johnson* were to be given retroactive effect, it would not benefit the defendant here. The record does not reflect a failure of the district attorney or of anyone else to bring counsel's letter (see fn. 2, *ante* pp. 923-924 to the attention of the grand jury.[3] If the letter in fact came to the grand jury's attention, it is axiomatic that the district attorney's obligation under *Johnson* was discharged, albeit not directly by him. The only proof on the subject is to the effect that the letter was delivered to the clerk of the court, addressed to the grand jury and to Judge Finnegan. Since it was so addressed, and since it was timely placed in the hands of the clerk for the purpose of being brought to the attention of the addressees, there is no reason to assume that it did not timely reach both Judge Finnegan and the grand jury. In fact, the presumption that official duty is duly performed (Evid. Code, § 664) leads to the conclusion that it did. Additionally, the subject matter of the motion to set aside the indictment did not involve substantive criminal law bearing upon the question of guilt or innocence (Evid. Code, § 501; Pen. Code, § 1096). Accordingly, insofar as proof of whether the grand jury was advised of defense witnesses or not, the general rule applies that the burden of proving facts entitling a person to relief is on the person seeking such relief. (Evid. Code, § 500.) Such burden was not carried.

## III

 The court's holding that the grand jury abused its discretion by failing to subpoena the witnesses called to its attention is clear error. The effect of such a rule of law would be to fetter the grand jury with an incapacity to return an indictment until it has summoned all potential witnesses designated by an accused or his counsel, whether they number

---

[3] The trial court effectively conceded this by placing its ruling upon alternative grounds (see *ante* p. 920).

5 as in this case, or 500. Such is not the law, and *Johnson* v. *Superior Court* did not so hold. Once the district attorney has discharged his duty as defined by *Johnson* (or the information has reached the grand jury by other means, such as defense counsel's letter), the grand jury may pursue further inquiry into the potential exculpatory evidence or not, as in its discretion seems proper (Pen. Code, § 939.7). Such discretion is not abused by the mere failure to subpoena the potential witnesses called to its attention. (See *People* v. *Conway* (1974) 42 Cal.App.3d 875, 890 [117 Cal.Rptr. 251].)

## IV

■ Despite the foregoing, the trial court's order setting aside the section 647a of the Penal Code count relating to Judy A. will be upheld, but for a totally different reason. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 315, p. 4293.) The crime charged in count 4 is a misdemeanor. The superior court has jurisdiction over misdemeanors where the same defendant is also concurrently charged with one or more felonies arising out of the same act or course of conduct. (*Kellett* v. *Superior Court* (1966) 63 Cal.2d 822 [48 Cal.Rptr. 366, 409 P.2d 206].) Otherwise it has not. (See fn. 1, *ante* p. 922.) Without a felony shown by the acts involving Judy A., superior court jurisdiction was lacking, and the dismissal was therefore in order.

Section 954 of the Penal Code does not aid the prosecution, for it deals only with joinder of offenses involving separate violations, separate defendants, separate times, and separate victims. (See *People* v. *Meneley* (1972) 29 Cal.App.3d 41 [105 Cal.Rptr. 432]; *Aydelott* v. *Superior Court* (1970) 7 Cal.App.3d 718 [86 Cal.Rptr. 713].) Such joinder presumes the existence of jurisdiction over each offense joined; jurisdiction is of course always fundamental and essential. (See Witkin, Cal. Criminal Procedure (1963) § 24 et seq.)

\* \* \* \* \*

The order is affirmed as it relates to count 4. As it relates to counts 1, 2, and 3 involving Linda H., the order is reversed, said counts are reinstated, and the case is remanded to the trial court for further proceedings.

Puglia, P. J., and Regan, J., concurred.

A petition for a rehearing was denied February 17, 1976, and respondent's petition for a hearing by the Supreme Court was denied March 24, 1976.