769 P.2d 92

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Steve HEWITT, Defendant–Appellee.**

**No. 9894.**

Court of Appeals of New Mexico.

June 7, 1988.

Certiorari Quashed Nov. 23, 1988.

Hal Stratton, Atty. Gen., Gail MacQuesten, Asst. Atty. Gen., Santa Fe, for plaintiff-appellant.

Jacquelyn Robins, Chief Public Defender, Deborah A. Moll, Asst. Appellate Defender, Santa Fe, for defendant-appellee.

## OPINION

DONNELLY, Chief Judge.

The State of New Mexico appeals an order of the district court quashing an indictment against defendant Steve Hewitt. Two issues are presented on appeal: (1) whether the trial court erred in quashing the indictment on the ground that the state failed to obtain and to present certain exculpatory evidence to the grand jury; and (2) whether the trial court erred in quashing the indictment on the basis of alleged prosecutorial misconduct. We reverse and remand.

Defendant Steve Hewitt was indicted on September 3, 1986, on charges of racketeering, trafficking in cocaine, manufacture of methamphetamine, commercial burglary, larceny of property over $20,000, bribery of a witness, two counts of bribery of a witness by threats, and conspiracy to commit commercial burglary. The other defendant, David Chamberlin, was jointly indicted with Hewitt. The trial court dismissed Chamberlin's indictment for violations of his right to due process and a speedy trial, and dismissed Hewitt's indictment for the prosecutors' failure to present exculpatory evidence to the grand jury or, alternatively, for prosecutorial misconduct. The state appeals only the order of dismissal as it relates to the charges against Hewitt.

The Bernalillo County Grand Jury was convened to investigate a number of alleged criminal offenses which arose from a police investigation of a reported burglary of an art studio owned by Robert Benjamin. Assistant District Attorneys Joe Lally and Douglas Hensen presented the case to the grand jury. Benjamin testified before the grand jury that burglars had broken into his studio in Albuquerque on December 12, 1985, and took approximately $112,000 in artwork. Two notes were left at the scene of the break-in: a handwritten note on a chalkboard and a separate typewritten note. The notes demanded payment of $1,000 and threatened to destroy the artwork if Benjamin reported the incident. The notes also directed Benjamin to finish some work in progress and to "pay your workers what you owe them." Benjamin testified that he understood the reference to "your workers" to mean Hewitt, because Hewitt was his only employee.

Benjamin reported the burglary to the police and also confronted Chamberlin. Benjamin stated that Chamberlin apologized for breaking into his studio, said that he wanted to keep the artwork for a possible plea bargain, and requested that Benjamin sign a release retracting his report of the alleged burglary.

Marsha Benjamin, Benjamin's sister, testified before the grand jury that she heard Chamberlin and Hewitt discuss breaking into Benjamin's studio while he was out of town. She further stated that Hewitt had previously told her that Benjamin owed him a lot of money and that he would extract it in artwork if necessary. Ms. Benjamin also testified that after the burglary, Hewitt came to her house and told her "your brother is setting us up" and "your brother's not going to be around much longer."

While the grand jury was receiving testimony, Hewitt appeared at the courthouse and delivered a letter addressed to the grand jury. The letter referred to the grand jury investigation scheduled for "September 3rd [1986] concerning [the] exculpatory matter." In the letter Hewitt stated that he had "heard rumors to the effect that a grand jury investigation is being held concerning me and my relationships with former employers" and that he "wish[ed] to exercise [his] privilege and constitutional rights to have at least some of the evidence disclosed to you which clearly proves my innocence of any crimes."

Hewitt's letter also listed three documents that he "respectfully demand[ed]" the grand jury to consider, and authorized any agency holding the information to release the items to the grand jury. The three documents referred to by Hewitt were: (1) a transcript of a taped conversation between Hewitt and Benjamin, on June 29–30, 1986; (2) a letter from Hewitt to the FBI stating his belief that he was going to be the subject of a "set-up"; and (3) the results of a polygraph test Hewitt took which he asserted would confirm his innocence. The tape, letter and polygraph results did not accompany Hewitt's letter to the grand jury.

At the suggestion of the prosecutors, the foreman read Hewitt's letter to the grand jury and entered it as an exhibit. Lally then advised the jurors to deliberate on two matters outside the presence of the prosecutors: first, determine whether the grand jury wished to obtain the documents listed by Hewitt; and second, whether the grand jury wished to continue waiting for an unnamed witness who telephoned and requested time to drive downtown and testify concerning some unknown matter before the grand jury. Lally told the grand jury that he did not have the evidence referred to in Hewitt's letter, but would attempt to obtain it if they desired to consider the evidence.

The prosecutors left the room and the grand jury then deliberated on the matters suggested by Lally. Thereafter, a juror asked Lally if Hewitt had been notified of his target status. Lally told the grand jury that notice of the grand jury proceedings had been mailed on August 8, 1986 to Hewitt's address. A juror then inquired whether the notice was sent by registered or certified mail. Hensen stated that the notice was sent by regular mail. A juror then pointed out that regular mail provides no guarantee of receipt of notice. Lally answered "[t]hat's right." Hensen also stated: "They [the target defendants] can raise this by motion if they think they've been prejudiced."

Lally also told the grand jury that if a target defendant has an attorney of record, the attorney also receives a copy of the notice. Lally stated that he had instructed his secretary to send a copy of the notice to two attorneys he believed might be representing Hewitt and Chamberlin, and that a third attorney had contacted him concerning the case a week or two earlier. Lally further explained that there was a statute requiring the state to notify a target defendant of the location and time of the grand jury hearing and of the charges being investigated. The foreman asked whether Hewitt had been so advised, and Lally replied that Hewitt had been notified on August 8, 1986. In response to another inquiry concerning Hewitt's letter, Lally an-

swered that it would be inappropriate for him to advise the grand jury that it did not need the items of evidence referred to in Hewitt's letter.

Thereafter, the grand jury, outside the presence of the prosecutors, decided that because no other witnesses were waiting to testify and because no other evidence was available at that time, it would proceed to consider the evidence before it. The grand jury deliberated and returned a true bill. Following indictment, Hewitt filed a motion to quash, alleging, among other things, that the state failed to present exculpatory evidence to the grand jury, that the prosecutors presented personal and unsworn testimony to the grand jury, and that the prosecutors had acted in bad faith.

At the hearing on Hewitt's motion to dismiss the indictment, the trial court examined Hewitt's letter, the tapes of the grand jury proceeding, and a written transcript of the grand jury proceeding. The trial court granted the motion, finding:

1. The State failed to present exculpatory evidence to the Grand Jury in that materials referred to in a letter presented to the Grand Jury Forman [sic] by Steve Hewitt were not provided to the Grand Jury for their consideration.

OR IN THE ALTERNATIVE:

2. The State failed to fulfill its obligations under § 31–6–7 N.M.S.A. and § 31–6–11(A) N.M.S.A. in that both Assistant District Attorneys Joe Lally and Douglas Hensen provided testimony to the Grand Jury and their testimony was in bad faith and calculated to influence the Grand Jury to return an Indictment against Steve Hewitt.

## I. EXCULPATORY EVIDENCE

On appeal, the state argues that the trial court erred in quashing the indictment on the ground that the prosecutors failed to obtain and to present alleged exculpatory evidence described in Hewitt's letter. Specifically, the state maintains that the trial court erred in requiring the prosecutors to search for this evidence, and erred in quashing the indictment where there was no showing that the evidence directly ne-

gated defendant's guilt or that the evidence would have changed the jury's vote on the issue of probable cause. We agree.

NMSA 1978, Section 31–6–11(B) (Repl. Pamp.1984), specifies in applicable part: "[t]he prosecuting attorney assisting the grand jury shall present evidence that *directly* negates the guilt of the target when he is aware of such evidence." (Emphasis added.) *See also* SCRA 1986, 16–308(D).

■ Not every omission on the part of a prosecutor in failing to present exculpatory evidence to the grand jury will automatically result in a dismissal of the indictment. *See Buzbee v. Donnelly*, 96 N.M. 692, 634 P.2d 1244 (1981). In order to be entitled to a dismissal of an indictment based upon a claim that the state failed to present exculpatory evidence to the grand jury as required by Section 31–6–11(B), a defendant must satisfy a three-pronged test. First, defendant must establish demonstrable prejudice resulting from the acts or omissions of the prosecutor. *State v. Velasquez*, 99 N.M. 109, 654 P.2d 562 (Ct.App. 1982) (indictment will not be dismissed absent a showing that the conduct complained of infringed upon the independent judgment of the grand jury and changed the result). *See Buzbee v. Donnelly*, 96 N.M. at 703, 634 P.2d at 1255. Second, the evidence which is claimed to be exculpatory must constitute evidence directly negating the guilt of defendant, as opposed to evidence which indirectly negates defendant's guilt. *Id.* at 699, 634 P.2d at 1251. Third, the evidence claimed to be exculpatory must be evidence which would be legally admissible at trial. *Id.*

■ Hewitt's letter to the grand jury referred to three evidentiary matters claimed to be exculpatory in nature. Only one of these items (the results of defendant's polygraph examination) was presented by defendant and received into evidence at the hearing on the motion to dismiss the indictment. The other two items (a tape recorded conversation with the alleged burglary victim, Robert Benjamin, and a letter from Hewitt to the Albuquerque FBI office) are not in the record on appeal and

were not introduced into evidence in the district court. Absent a showing that the evidence was directly exculpatory to the defendant, that the evidence would have been legally admissible at trial, and that the defendant suffered demonstrable prejudice from the failure to present the evidence, it was error to dismiss the indictment on this basis.

Defense counsel stated to the district court at the hearing on the motion to dismiss that:

Your Honor, if the court feels it's necessary, Mr. Hewitt is here today. He would be prepared to testify that he himself delivered not only the letter that the documents referred in the letter to the Grand Jury secretary, and she refused to take those documents from him, and those documents were a matter of feet from the Grand Jury deliberating in the next room.

Defense counsel's statement that Hewitt would testify as to the nature of the proferred evidence did not constitute evidence. *See State v. Jacobs*, 102 N.M. 801, 701 P.2d 400 (Ct.App.1985); *State v. Foster*, 83 N.M. 128, 489 P.2d 408 (Ct.App.1971). With the exception of the polygraph test results, there was no factual basis for the court's determination that the matters referred to by Hewitt in his letter were in fact directly exculpatory. The polygraph test results are contained in a letter from Bill D. Cox, the polygraph examiner, and are a part of the record proper on appeal. The letter, however, constitutes inadmissible hearsay evidence. *See Buzbee v. Donnelly.* Moreover, at the motion hearing defendant made no showing that Cox could qualify as an expert polygraph witness at trial, and defendant did not develop proof of the accuracy of the results of the polygraph examination. *See State v. Anthony*, 100 N.M. 735, 676 P.2d 262 (Ct.App.1983). Even if the polygraph test results constituted legally admissible evidence, the test was limited to determining whether Hewitt had knowledge of, or participated in, the theft of property from Benjamin's studio. The polygraph examination did not directly refer to issues involving Hewitt's alleged involvement in other charges listed in the indictment, i.e. Count I (racketeering), Count II (manufacture of methamphetamine), Count VII (bribery), or Counts VIII and IX (threatening a witness).

Although a prosecutor is required to present direct exculpatory evidence to the grand jury, he is invested with wide discretion as to the selection and presentation of evidence. *Kerpan v. Sandoval County District Attorney's Office*, 106 N.M. 764, 750 P.2d 464 (Ct.App.1988); § 31–6–11(B). *See People v. Snow*, 72 Cal.App.3d 950, 140 Cal.Rptr. 427 (1977). *See generally*, Note, *The Prosecutor's Duty to Present Exculpatory Evidence to an Indicting Grand Jury*, 75 Mich.L.Rev. 1514 (1977).

In *People v. McAlister*, 54 Cal.App.3d 918, 126 Cal.Rptr. 881, *cert. denied*, 429 U.S. 850, 97 S.Ct. 138, 50 L.Ed.2d 123 (1976), a California Appellate Court held that although the grand jury must be informed of the existence of evidence tending to negate allegations against an accused, it has discretion to pursue further inquiry into the potentially exculpatory evidence. *McAlister* is based on a literal reading of California's statute which provides, in part: "[t]he grand jury is not required to hear evidence for the defendant, but ... when it has reason to believe that other evidence within its reach will explain away the charge, it shall order the evidence to be produced...." Cal.Penal Code § 939.7 (West 1985). This statute is similar to our statute. Under NMSA 1978, Section 31–6–12 (Repl.Pamp.1984), the grand jury is invested with the authority to order the attendance of witnesses before it, and to direct the production of records or other evidence when it deems the evidence is relevant to a pending investigation.

The burden rests on a defendant seeking to quash an indictment on the basis that exculpatory evidence was not presented by the prosecutor to prove that the matters not submitted to the grand jury were directly exculpatory and admissible at trial, and that he was prejudiced thereby. *See Buzbee v. Donnelly; Kerpan v. Sandoval County District Attorney's Office* (petitioner cannot compel respondent to produce certain evidence based upon his own asser-

tion that the evidence is direct and exculpatory). Defendant did not produce the alleged exculpatory evidence at the motion hearing, nor did he present matters indicating that the exculpatory evidence satisfied the three pronged test enunciated in *Buzbee*. Hence, it was error to dismiss the indictment on the ground articulated by the trial court.

## II. PROSECUTORIAL STATEMENTS

The alternative basis relied upon by the district court for dismissal of the indictment was that the prosecutors Lally and Hensen improperly testified before the grand jury in bad faith in a manner calculated to influence the grand jury to return an indictment. The state contends the trial court abused its discretion in quashing the indictment on the ground of prosecutorial misconduct where the prosecutors' comments did not amount to deceitful or malicious overreaching to such degree as would subvert the grand jury proceedings and where defendant made no showing of prejudice.

■ Dismissal of an indictment based upon prosecutorial misconduct is proper when a defendant shows demonstrable prejudice. *See State v. Velasquez.* Specifically, defendant must show the conduct complained of infringed upon the independent judgment of the grand jurors and that the result would have been different had the conduct in question not occurred. *Id.; see United States v. Page*, 808 F.2d 723 (10th Cir.), *cert. denied*, 482 U.S. 918, 107 S.Ct. 3195, 96 L.Ed.2d 683, and 484 U.S. 989, 108 S.Ct. 510, 98 L.Ed.2d 508 (1987) (dismissal of an indictment is proper only if the prosecutorial misconduct is so flagrant that there was some infringement on the grand jury's ability to exercise independent judgment). Perjury, deceit, or malicious overreaching that subverts a grand jury proceeding constitutes conduct that infringes upon the independent judgment of the jurors. *See State v. Ballinger*, 99 N.M. 707, 663 P.2d 366 (Ct.App.1983), *rev'd on other grounds*, 100 N.M. 583, 673 P.2d 1316 (1984).

■ Statements by a prosecutor to the grand jury explaining the law or procedure are proper so long as the statements are not in conflict with the charge given to the grand jury by the court pursuant to NMSA 1978, Section 31–6–9 (Repl.Pamp.1984) or are not otherwise incorrect statements of the law or improper. *See State v. Martinez*, 97 N.M. 585, 642 P.2d 188 (Ct.App. 1982) (absent a showing of prejudice, comments of a prosecutor to the grand jury explaining grand jury procedures concerning a target defendant were not fundamentally unfair or improper and did not deprive defendant of due process of law; *State v. Ballinger* (in an effort to maintain coherence and continuity, prosecutor's commentary was unavoidable and necessary in explanation of facts, law, and sequential procedures unfamiliar to jury). Similarly, other courts have recognized that a district attorney attending the grand jury is permitted to advise the jury on questions of law. *See United States v. Singer*, 660 F.2d 1295 (8th Cir.1981), *cert. denied*, 454 U.S. 1156, 102 S.Ct. 1030, 71 L.Ed.2d 314 (1982); *United States v. Heffington*, 682 F.2d 1075 (5th Cir.1982), *cert. denied, Giella v. United States*, 459 U.S. 1108, 103 S.Ct. 734, 74 L.Ed.2d 957 (1983).

■ Applying the above rules, we determine that there is no indication in the record that the prosecutors' answers to jurors' questions improperly influenced the independent judgment of the jury so as to exclude or disregard the evidence urged to be considered by defendant. The burden of proof is upon defendant to show that the alleged prosecutorial misconduct changed the result. *See State v. Velasquez.*

In order to vote an indictment, the grand jury "must be satisfied from the *lawful evidence* before it that an offense against the laws has been committed and that there is probable cause to accuse by indictment the person named * * * *" NMSA 1978, § 31–6–10 (Repl.Pamp.1984) (emphasis added). Section 31–6–11(A) provides: "[e]vidence before the grand jury upon which it may find an indictment is the oral testimony of witnesses under oath and any documentary or other physical evidence exhibit-

ed to the jurors." Neither Section 31-6-10 nor Section 31-6-11 limit "lawful evidence" upon which to base an indictment to only direct evidence. The testimony of the witness Marsha Benjamin constituted evidence of probable cause sufficient to indict defendant on the larceny charge contained in Count VI.

Because defendant has not made the required showing of demonstrable prejudice by establishing that the alleged prosecutorial misconduct both changed the result and infringed upon the independent judgment of the grand jurors, it was improper to dismiss the indictment.

The order dismissing the indictment against defendant Hewitt is reversed and the cause is remanded for further proceedings consistent herewith.

IT IS SO ORDERED.

FRUMAN, J., concurs.

ALARID, J., dissents.

ALARID, Judge, dissenting.

I dissent from the holding that the trial court's dismissal of Mr. Hewitt's indictment was error because defendant failed to show demonstrable prejudice by establishing that the alleged prosecutorial misconduct both changed the result and infringed upon the independent judgment of the grand jurors. I believe that the majority focuses on the issue of whether the proffered evidence is in fact exculpatory, rather than giving full consideration to the question of whether the prosecutors violated their duty to act in a fair and impartial manner under NMSA Section 31-6-7 (Repl. Pamp.1984). While I recognize that *Buzbee v. Donnelly* is controlling for determining whether evidence is exculpatory, I suggest that the instant case also required this court to consider the parameters of prosecutorial behavior in the grand jury setting. I believe that this court had an opportunity to decide that there must be a fair balance between the discretion invested in a prosecutor vis-a-vis the statutory duties attached to his position.

It is clear that, under *Buzbee,* in order to merit dismissal of an indictment based upon the prosecutor's alleged misconduct, a defendant must show resulting prejudice. The prejudice must be such that the conduct in question infringed upon the independent judgment of the grand jury, and that the result would have been different had the questionable conduct not occurred. I believe that the test of prejudice is met in the present case.

I suggest that the prosecutors' actions here raised serious questions of fairness and partiality in at least three instances. Moreover, I believe that those actions likely affected the independent judgment of the grand jury. First, Mr. Lally unequivocally stated that Mr. Hewitt was notified about the grand jury proceedings, and Mr. Hansen added that if Mr. Hewitt complained of no formal notice, he could then notify the trial court to correct the alleged error. Second, Mr. Lally was delinquent in not attempting to obtain the items proffered by Mr. Hewitt, although they may have been exculpatory. Rather, Mr. Lally merely left it to the grand jurors' discretion whether to obtain the evidence. Third, both Mr. Lally and Mr. Hansen failed to advise the jurors of their statutory duties under NMSA Section 31-6-11(B) (Repl.Pamp.1984) to order all (exculpatory) evidence produced.

I suggest that these instances present questions as to the prosecutors' discretion, and whether that discretion here affected the independent judgment of the grand jury. Of particular consequence is that the prosecutors ventured beyond merely answering the questions posed by the grand jury, but actually made statements calculated to influence the grand jurors' judgment and to alleviate their concerns.

The second test for prejudice is to determine whether the result of the case would have been different absent the misconduct of the prosecutor. *See Buzbee.* I believe that this test was met here, as well. I believe the record provides ample evidence to uphold the trial court's implied finding which states that the prosecutors "provided testimony calculated to influence the Grand Jury to *return an Indictment* against Steve Hewitt." (Emphasis added.) The record actually shows that the evidence

against Mr. Hewitt was largely circumstantial.

Hence, given the limited and attenuated evidence against Hewitt, I believe that the trial court's implied finding that the result would have been different absent the prosecutorial misconduct is supported by the evidence. Additionally, I believe that there is substantial evidence to support the trial court's finding that the prosecutors' conduct was in bad faith and was prejudicial calculated to influence the independent judgment of the grand jury.

For the foregoing reasons, I respectfully dissent.