1998-NMCA-135

965 P.2d 945

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Samson BLUE, Defendant–Appellee.**

**No. 18637.**

Court of Appeals of New Mexico.

Aug. 14, 1998.

Certiorari Granted Sept. 28, 1998.

Tom Udall, Attorney General, Bill Primm, Assistant Attorney General, Santa Fe, for Appellant.

Victor A. Titus, Titus & Murphy, Farmington, for Appellee.

## OPINION

APODACA, Judge.

{1}  This is an appeal by the State from the district court's dismissal of an indictment against Defendant. The district court dismissed the indictment because of the prosecutor's failure to present additional evidence of Defendant's polygraph test to the grand jury as direct exculpatory evidence. The State argues that dismissal was error. We agree and reverse.

## I.  FACTUAL  AND  PROCEDURAL BACKGROUND

{2}  The grand jury indicted Defendant for criminal sexual penetration by force or coercion and kidnapping of the victim. *See* NMSA 1978, §§ 30–9–11(C)(2) (1995), 30–4–1(A)(3) (1995). At the grand jury proceeding, the prosecutor presented some evidence that Defendant took and passed a polygraph test and that the victim's polygraph score was inconclusive. The prosecutor, however, did not present evidence of the polygrapher's interview of Defendant, the written report of Defendant's polygraph, or the polygrapher's explanation of the test and of Defendant's score.

{3}  Defendant filed a motion to quash the indictment because of the prosecutor's failure to present exculpatory evidence regarding Defendant's polygraph test. *See* NMSA 1978, § 31–6–11(B) (1981) (stating that prosecutor shall provide exculpatory evidence to the grand jury). The district court initially denied the motion, and Defendant filed a motion to reconsider. On reconsideration, the district court quashed the indictment under the authority of *State v. Hewitt,* 108 N.M. 179, 182, 769 P.2d 92, 95 (Ct.App. 1988).

{4}  *Hewitt* requires a defendant to satisfy a three-prong test to obtain dismissal of an indictment because of the state's failure to present exculpatory evidence to the grand jury. First, a defendant must "establish demonstrable prejudice resulting from the acts or omissions of the prosecutor." *Id.* Second, the evidence the prosecutor failed to present must directly negate the defendant's guilt. Third, the evidence must be legally admissible at trial. *Id.* In this appeal, the State argues that Defendant's proffered evidence does not satisfy the *Hewitt* test. We discuss all three prongs of the test to clarify the law under each prong, even though Defendant's failure to satisfy any *one* of the prongs is fatal to a dismissal of the indictment.

## II.  DISCUSSION

### A.  Standard of Review

{5}  The district court's dismissal of the indictment presents a matter of law reviewed de novo on appeal. *See State v. Armijo,* 118 N.M. 802, 811, 887 P.2d 1269, 1278 (Ct.App.1994) (district court's dismissal of an indictment due to prosecutor's alleged failure to present exculpatory information to grand jury is reviewed de novo).

### B.  Prejudice

{6}  Under the first prong of the *Hewitt* test, Defendant must show that the prosecutor's conduct infringed on the grand jurors' independent judgment and the result would have been different had the conduct not occurred. *See Hewitt,* 108 N.M. at 184, 769 P.2d at 97. Defendant did not meet this burden. Defendant has not argued on appeal how the result would have differed in the absence of the prosecutor's conduct.

{7}  In fact, the grand jury was specifically informed that Defendant had passed the polygraph; telling the grand jury Defendant's exact score would not have accomplished much more in the context of a probable cause determination. *See State v. Penner,* 100 N.M. 377, 379, 671 P.2d 38, 40 (Ct.App.1983) (holding that prejudice needed to be shown is that the missing evidence would have changed the vote on probable cause). Additionally, the grand jury did

not have questions about the victim's "inconclusive" score and how that score compared to Defendant's passing score. The detective also informed the grand jury about Defendant's version of the events. Thus, Defendant's version that he knew the alleged victim and that he engaged in consensual sex with her was presented to and considered by the grand jury.

{8} Consequently, we hold that failure to present the polygrapher's interview of Defendant, Defendant's polygraph report, and explanation of his test and score did not prejudice Defendant.

{9} Because Defendant was not prejudiced by the prosecutor's failure to present the evidence to the grand jury, Defendant has failed to meet the first *Hewitt* prong, and thus we hold that there was no due process violation. *See Buzbee v. Donnelly*, 96 N.M. 692, 702–06, 634 P.2d 1244, 1254–58 (1981) (implying that due process analysis for the withholding of evidence should consider effect on grand jury and prejudice to the defendant).

## C. Direct Negation of Defendant's Guilt

■ {10} The second prong of the *Hewitt* test requires Defendant to demonstrate that the omitted evidence directly negated his guilt. *See id.* at 182, 769 P.2d at 95. "Direct evidence is evidence which, if believed, proves the existence of the fact without inference or presumption." *Buzbee*, 96 N.M. at 700, 634 P.2d at 1252. We hold that Defendant's proferred evidence was not directly exculpatory.

{11} The polygraph evidence would not prove the existence of a fact without inference or presumption. This Court in *State v. Anthony*, 100 N.M. 735, 737 n. 2, 676 P.2d 262, 264 n. 2 (Ct.App.1983), explained:

A polygraph machine is a device [that] measures and records the changes in the examinee's blood pressure or pulse rate, respiration rate and depth, and galvanic skin resistance while undergoing questioning. The theory underlying the use of such devices is that if an individual consciously responds untruthfully to question-

ing, the machine will detect physiological indications revealing a deceptive answer.

Consequently, the grand jury would have to infer from Defendant's physiological reactions that he was probably telling the truth.

{12} Additionally, polygrapher's letter acknowledges that his opinion was based on inferences:

Inferences about whether a person is being truthful or deceptive in answering the relevant questions are justified only when the person consistently produces autonomic physiological responses that are stronger to either control or relevant questions.

To negate Defendant's guilt, the grand jury would have to presume that Defendant's honest perception of the events was the objective truth.

{13} The grand jury would also have to assume that Defendant did not take countermeasures against the polygraph.

"[A]mong the factors that can adversely affect the reliability of the polygraph test are the emotional upset of the subject, fatigue, drunkenness, drugs, bad physical or emotional condition, high blood pressure, low blood pressure, hardening of the arteries, obesity, feeble-mindedness, amnesia, a psychotic condition, being a pathologic liar, lack of fear or concern, at being caught in a lie, surreptitious nervous simulation, use of antiperspirants, hypnosis, extraneous noise or abnormal temperatures."

*Anthony*, 100 N.M. at 738, 676 P.2d at 265 (quoting *People v. Berry*, 118 Cal.App.3d 122, 173 Cal.Rptr. 137, 143 (1981)). According to polygraph experts, a subject's state of mind and physical condition can alter the responses measured by the polygraph. *See Anthony*, 100 N.M. at 738, 676 P.2d at 265.

{14} Defendant relies on language in *Hewitt*, 108 N.M. at 183, 769 P.2d at 96, to support his argument. This Court in *Hewitt* stated: "With the exception of the polygraph test results, there was no factual basis for the court's determination that the matters referred to by Hewitt in his letter were in fact directly exculpatory." *Id.* We interpret this language to mean that the only evidence before the trial court at the motion hearing

was the polygraph evidence. *See id.* at 182–83, 769 P.2d at 95–96. *Hewitt* did not analyze whether the polygraph results were direct evidence. Rather, our Court focused on the inadmissibility of the evidence under the third prong. *See id.* at 183, 769 P.2d at 96. We thus conclude that Defendant's citation of *Hewitt*, 108 N.M. at 183, 769 P.2d at 96, does not determine the issue of direct evidence.

### D. Admissibility

■ {15} The final prong of the *Hewitt* test requires Defendant to prove that the evidence would be legally admissible at trial. *See id.* at 182, 769 P.2d at 95. Rule 11–707 NMRA 1998 provides the standards for the admissibility of polygraph evidence:

**B. Minimum qualifications of polygraph examiner.** To be qualified as an expert witness on the truthfulness of a witness, a polygraph examiner must have at least the following minimum qualifications:

(1) at least five (5) years' experience in administration or interpretation of polygraph examinations or equivalent academic training;

(2) conducted or reviewed the examination in accordance with the provisions of this rule; and

(3) successfully completed at least twenty (20) hours of continuing education in the field of polygraph examinations during the twelve (12) month period immediately prior to the date of the examination.

**C. Admissibility of results.** Subject to the provisions of these rules, the opinion of a polygraph examiner may in the discretion of the trial judge be admitted as evidence as to the truthfulness of any person called as a witness if the examination was performed by a person who is qualified as an expert polygraph examiner pursuant to the provisions of this rule and if:

(1) the polygraph examination was conducted in accordance with the provisions of this rule;

(2) the polygraph examination was quantitatively scored in a manner that is generally accepted as reliable by polygraph experts;

(3) prior to conducting the polygraph examination the polygraph examiner was informed as to the examinee's background, health, education and other relevant information;

(4) at least two (2) relevant questions were asked during the examination; and

(5) at least three (3) charts were taken of the examinee.

**D. Notice of examination.** Any party who intends to use polygraph evidence at trial, shall not less than thirty (30) days before trial or such other time as the district court may direct, serve upon the opposing party a written notice of such party's intention to use such evidence. The following reports shall be served with the notice:

(1) a copy of the polygraph examiner's report, if any;

(2) a copy of each chart;

(3) a copy of the audio or video recording of the pretest interview, actual testing and posttest interview; and

(4) a list of any prior polygraph examinations taken by the examinee in the matter under question, including the names of all persons administering such examinations, the dates and the results of the examinations.

*See also Anthony*, 100 N.M. at 737–38, 676 P.2d at 264–65.

{16} We hold that Defendant failed to satisfy these requirements. Defendant made no showing that the examiner could qualify as an expert polygraph witness at trial. Nor did Defendant develop proof of the accuracy of the results of the polygraph examination. *See Hewitt*, 108 N.M. at 183, 769 P.2d at 96. As a result, Defendant also failed to satisfy the third prong under *Hewitt*. *See id.* at 182, 769 P.2d at 95.

### III. CONCLUSION

{17} In summary, we conclude that the trial court improperly dismissed the indictment against Defendant. We hold that Defendant failed to show that: (1) omission of his proferred evidence was prejudicial, (2) the evidence directly negated his guilt, and (3) the evidence would be legally admissible

at trial. We therefore reverse the district court's order and remand for further proceedings consistent with this opinion.

{18} **IT IS SO ORDERED.**

PICKARD and BOSSON, JJ., concur.